## OCEAN STEAMSHIP COMPANY *v.* HAMILTON.

112 901
112 923
112 901
114 932
112 901
c119 406
112 901
123 658
123 742

1. A landlord is not liable for personal injuries to a servant of his tenant, arising from a defect in the rented premises of which the landlord had no knowledge and which he had not been notified to repair. It was in the present case erroneous not to grant a nonsuit.

2. When the tenant is in the exclusive possession and control of the rented premises, the landlord is under no duty of examining the same with a view to ascertaining whether or not repairs are needed, unless requested so to do.

3. A party dissatisfied with a verdict can not, without filing a motion for a new trial, properly bring to this court for review any "ruling, order, decision, or charge" of the court below which did not, either singly or in connection with another or others, necessarily control the finding against the plaintiff in error; nor, in the absence of such a motion, is an attack upon a verdict by direct exception thereto, save as herein indicated, of any avail.

Argued February 1, — Decided March 1, 1901.

Action for damages. Before Judge Norwood. City court of Savannah. July 23, 1900.

The plaintiff testified: While working for T. S. Wylly & Co. on the Central Railroad high wharf on the 28th of April, 1900, I was told to take a piece of timber 14x16, about 35 feet long, out of the way; so I told the men on the stage to come quick. I had a crowbar in my hand. I snatched up the crowbar and ran to the end of the timber. I jammed the bar under it, and the men strung alongside of the stick of timber, waiting for a fingerhold. I could not give them the hold there. I told them to look out, and I made a break to go around them to go to the center of the piece with a quick move on me, and in going the wharf broke through with me in a rotten place in the dock, and that threw me. I went clean up to my thigh in the dock. There was no hole in the wharf at the time I went through; the wharf looked as if it was safe, until it broke through with me. The place where I went through looked no different from any other place around there; there was nothing to put me on notice that it was a dangerous place. Afterwards they patched up the wharf. Mr. Skipper, the regular wharf carpenter down there, fixed the wharf. He had a crowbar, and in some places he would hit it like that, and the bar would start on through. I did not see that the plank I stepped on was rotten; it looked just the same as any other wharf; all seemed to be safe. This was a pretty big wharf, and there is constantly lumber piled on some of

it. This stick of timber had been piled on this wharf only the day before. They did not keep lumber piled on this portion of the wharf; it was used for sorting orders. I made a hole in this plank big enough for my thigh and hip to go through. I made a break around the crowd to get to the center of the piece, and on my way the plank gave way. There was nothing to show me that the plank was rotten when I started to work on it. The crowbar was not under the stick of timber when I fell through. I fell through while I was on my way from the end to the center of the stick.

The plaintiff also proved his injury.

*Lawton & Cunningham*, for plaintiff in error.
*Osborne & Lawrence*, contra.

LUMPKIN, P. J. The bill of exceptions now before us, among other things, assigns error upon the refusal of the trial court to grant a nonsuit. The action was brought by Hamilton against the Central of Georgia Railway Company and the Ocean Steamship Company of Savannah, for personal injuries. Before any evidence was introduced, "the plaintiff dismissed his suit as to the defendant Central of Georgia Railway Company, and the cause proceeded against the Ocean Steamship Company of Savannah as sole defendant." The word "defendant" will, therefore, hereinafter be used to designate the Steamship Company. The petition alleged, and the answer of the defendant admitted, that the plaintiff was an employee of T. S. Wylly & Co.; that, as such, he was working upon a wharf belonging to the defendant; that "Wylly & Co. were then and there using the said wharf by and with the consent of the said defendant," and that the particular business in which the plaintiff was employed as a servant of Wylly & Co. was that of "moving lumber and loading the same on vessels moored at said wharf." The tenth paragraph of the petition was as follows: "Petitioner alleges negligence upon the part of defendants in having and keeping in a dangerous condition the said wharf, and letting the same to petitioner's employer for the business petitioner was employed in, while it was in such a dangerous condition, and in failing to repair the same and to keep the same in repair while it was so let to petitioner's employer for the business petitioner was employed in." To this paragraph of the plaintiff's petition the Steamship Company answered: "This defendant admits, as stated in the tenth

paragraph of said petition, that said wharf was let to said T. S. Wylly & Co. for the business petitioner's employer was engaged in, but denies any negligence upon its part in having and keeping the same in a dangerous condition, or that the same was in a dangerous condition when let; and denies any negligence in failing to repair the same, and in keeping the same in repair while it was so let." At the hearing the plaintiff was sworn as a witness in his own behalf. His testimony, upon which alone he relied to establish diligence on his part and the alleged negligence of the defendant, is set forth in full in the reporter's statement preceding this opinion.

1. The court erred in not granting a nonsuit. It is apparent that the plaintiff signally failed to establish his allegation that the wharf in question was in a dangerous condition at the time it was rented to his employers, Wylly & Co. There is no evidence as to the time when they took possession of the wharf or as to its condition at that time. For aught that appears, the wharf when rented to them may have been in all respects safe and sound. The plaintiff did prove that at the time of his injury a portion of the wharf was in a defective condition. But if ever evidence established the fact that a defect was latent, it certainly did so in the present instance. This being so, it was not shown that the landlord actually knew of its existence.

While under section 3118 of the Civil Code a landlord is responsible to a servant of his tenant "for damages arising from defective construction, or for damages from failure to keep the premises in repair," he is not liable because of a failure to repair a defect of which he neither knew nor ought in the exercise of reasonable diligence to have known. Properly construed, this section does not make a landlord responsible as an insurer, but liable only in the event he fails to comply with his statutory duty of keeping the premises in repair. The provisions of this section were in large part codified from the decision of this court in *White* v. *Montgomery*, 58 *Ga.* 204, in which it was clearly ruled that the duty of a landlord to make repairs did not arise, unless he either knew from personal observation of the existence of the defects, or was in some manner put upon notice thereof. In delivering the opinion of the court, Jackson, J., cited approvingly the case of *Guthman* v. *Castleberry*, 48 *Ga.* 172, 49 *Ga.* 272, wherein it was held that before a landlord was under a duty of making repairs, notice to him of the need thereof was requisite, unless he was

himself in a position to know that the making of such repairs was necessary. To the same effect, see *Whittle* v. *Webster*, 55 *Ga.* 180; and note the dictum of Bleckley, J., in *Driver* v. *Maxwell*, 56 *Ga.* 14, to the effect that a landlord is bound to keep the rented premises in a condition reasonably fit for the purposes for which it was intended the same should be used; " on proper notice from his tenant." See also *Stack* v. *Harris*, 111 *Ga.* 151. As we understand it, the section now under consideration was designed simply to embody a rule of law which was well settled and well understood at the time of its codification, and not to enlarge the duty devolving upon landlords with respect to the making of repairs, nor to impose upon them a harsher rule of responsibility than that to which they were already subject. There was in the present case not a particle of evidence tending to show that the Steamship Company knew of the defective condition of the plank by the breaking of which the plaintiff was injured, or that the company's attention had ever in any manner been called to the same.

2. As will have been noted, the plaintiff alleged, and the defendant admitted, that the wharf had been rented by the Steamship Company to Wylly & Co. So far as appears, therefore, the premises were in the exclusive possession and control of the plaintiff's employers. There is certainly nothing in the evidence to indicate the contrary. Yet the court charged the jury: " If you find in this case that the plaintiff was working for T. S. Wylly & Co., and T. S. Wylly & Co. in the course of their business received timber on the wharf of the defendant, that that wharf was in a dangerous condition, and that that condition could have been discovered by the defendant by the exercise of ordinary care, and that the plaintiff, while engaged in his work on the wharf, in the exercise of ordinary care, fell through a rotten place in the wharf, and was thereby injured, then I charge you that you should find for the plaintiff." It can not be seriously questioned, in view of the evidence and of the admission in the defendant's answer above referred to, that this charge constrained a verdict for the plaintiff. Error was assigned upon it in the bill of exceptions. That it was erroneous we are quite sure. There was, under the existing conditions, no duty resting upon the landlord of looking for or endeavoring to discover the defect in the wharf. The landlord's duty was, after notice of its unsafe condition, to make the needed repairs. A landlord after

parting with the possession of the rented premises is not in a situation to exercise a constant and unremittent supervision over them, and thus keep himself informed as to the necessity for repairs. On the contrary, as was remarked by Jackson, J., in dealing with the case of *White* v. *Montgomery*, supra, "the use of the tenements really belongs to the tenant during the lease; they are his property to use for the term for which they are rented, and the landlord has no right to enter upon them, except by permission of the tenant, during the term for which they are rented."

3. Besides raising the points already discussed, the bill of exceptions contains certain assignments of error with which we are not called upon to deal, because there was no motion for a new trial, and the rulings to which these assignments related, whether taken separately or together, were not such as necessarily controlled the verdict against the defendant; nor did they add aught to the efficacy of the exception to the charge with which we have specifically dealt. See *Smith* v. *Smith*, 112 *Ga.* 351. The plaintiff in error also undertakes to except " to the verdict of the jury " and to assign " error upon the same," but, of course, the verdict can not in this manner be brought under review. See *Jones* v. *Pitts*, 98 *Ga.* 521; *Holsey* v. *Porter*, 105 *Ga.* 837, and cases cited.

*Judgment reversed. All concurring, except Simmons, C. J., absent.*