8501.   DAVIS *v.* HALL.

1. The petition set forth a cause of action, and the court erred in sustaining the general demurrer.
2. The 15th paragraph of the petition, inasmuch as it sought to recover general damages on the ground that the plaintiff was humiliated, mortified, or shocked, was specially demurrable; since, where the injury complained of is not a personal tort, but an injury to property, there can be no recovery for mental suffering. *Stovall* v. *Caverly,* 139 *Ga.* 243 (4), 246 (77 S. E. 29).

DECIDED NOVEMBER 14, 1917.

Action for damages; from Laurens superior court—Judge Kent. January 23, 1917.

*G. H. Williams, W. T. Townsend,* for plaintiff.

*J. S. Adams,* for defendant.

WADE, C. J.   The plaintiff brought suit against S. T. Hall for damages, alleging that he had injured her in the sum of $473.50, by reason of the following facts: The defendant was a resident of Laurens county, Georgia, and was the owner of a certain two-story building in the City of Cartersville, Bartow county, Georgia. The plaintiff occupied a storeroom on the ground floor of said building, as a tenant of the defendant, at the time of the injuries complained of. During the continuance of her tenancy the building was provided with an automatic fire-protection system, consisting of pipes running throughout all portions thereof, and connected with the water-pipes of the City of Cartersville by means of a valve. According to the plan of said protection system, the pipes were to be filled with air at all times (except in case of actual fire), with sufficient resulting pressure on the valve connecting the system with the city waterworks to prevent water from flowing into

the pipes. On top of said pipes, at intervals of about ten feet, "sprinkler heads" were fitted, which "heads" were closed with a substance that would melt "at about 165 degrees of heat," and when said substance melted the sprinkler heads would open, the air in the pipes throughout the building would escape, and water would then enter said pipes and be forced out into the building wherever the sprinkler heads were open. Said system was so constructed that when the same was in order, and the water from the city waterworks flowed into the pipes thereof, a gong located outside of the building would automatically give an alarm, "the same being thus constructed for the purpose of warning the occupants of said building, and others, in case of actual fire or flood." The system was so constructed that the water, after entering the pipes thereof, could be "cut off," and thus the unnecessary flow of water into the building (after an actual fire had been extinguished) could be prevented. At the time of the injuries complained of, the plaintiff had in her storeroom in said building a stock of goods of a value alleged, which goods were described generally, besides the usual fixtures for a store of that character; and she was engaged in the sale of merchandise at retail. "On the 20th day of November, 1914, without any warning to petitioner, one of said sprinkler heads above the toilet over petitioner's said store, and about fifteen feet back from the front thereof, came open, the water began to pour in great quantities into the said store of petitioner from nearly all parts of the ceiling thereof, and continued to pour therein for a period of one and a half or two hours, until the water became some six inches in depth, causing a great portion of petitioner's goods to become greatly injured and damaged, as hereinafter more fully set out." "Petitioner had no control over any portion of said building, except said storeroom No. 104; she had nothing to do with keeping in repair or looking after said system; said Hall had and held general supervision of said building, and especially of said system, subject to the rights of the various tenants in said storeroom, offices," etc. She was forced to suspend business and procure help, at a price stated, in removing a large portion of her goods to a place of safety. By reason of the facts set forth she had been "greatly humiliated, mortified, and shocked," and "her stock of goods was specially damaged, as thereafter set forth in her petition, the amount of *dam-*

*ages* for each article or thing being therein set forth in detail. The defendant was negligent in the following particulars: "(*a*) In not having the pipes of said system filled with air, and especially at the time of the commission of the wrongs and injuries herein complained of; (*b*) in having the pipes of said system filled with water; (*c*) in allowing said water to flood the store of petitioner for one and a half or two hours, when the same might have been cut off in two minutes; (*d*) in failing to have said gong connected so as to give petitioner warning of the coming water." Wherefore she prayed for general damages amounting to $473.50. She amended her petition by alleging that it was the duty of the defendant to keep the water-pipes in the building in repair, so as to protect her stock of goods from leakage therefrom, but he had negligently and carelessly allowed said pipes to become leaky, to her injury and damage as set out in her original petition; that at the time of the injuries complained of the defendant negligently allowed the gong, before referred to, to be removed and disconnected, and "at said time the same failed to give the alarm to petitioner;" that at the time of the injuries the water-pipes were filled with water, and not with air; "that the plaintiff knew nothing about how to cut off the water from said sytsem, and that the defendant kept an agent in charge of said building, whose duty it was to supervise the same and protect the various tenants from injury," but "said agent was careless, negligent, and incompetent, and knew nothing about said system, and that said Hall [the defendant] knew that said agent knew nothing about said system."

The defendant demurred generally, upon the grounds, (1) that no cause of action was set forth; (2) that the alleged injuries were "too remote to be the subject-matter of a legitimate cause for the recovery of damages." He specially demurred (3) to the allegation that the plaintiff was "humiliated, mortified, and shocked," and to the allegation of special damages as to various items of personal property, because the petition did not sufficiently show that the defendant was responsible for the loss of such property, or that the same was a total loss; and (4) because the alleged acts of negligence were not attributable to the conduct of the defendant, and it was not alleged that he was "responsible for the appliances therein referred to not being in perfect order."

The main question in this case is whether the general demurrer

was properly sustained. In our opinion, the petition set forth a cause of action, and the trial court erred in holding to the contrary and dismissing the suit.

It is the duty of a landlord to keep the rented premises in repair (Civil Code, § 3699); but ordinarily, before he is liable in damages for a failure to keep the premises in repair (*where he has parted with possession*), notice of the defective condition of the premises must, of course, be brought home to him. See *Ocean Steamship Co.* v. *Hamilton*, 112 *Ga.* 903 (38 S. E. 204); *Stack* v. *Harris*, 111 *Ga.* 149 (36 S. E. 615); *Roach* v. *LeGree*, 18 *Ga. App.* 250, 251 (89 S. E. 167); *Alexander* v. *Owens*, 18 *Ga. App.* 326 (89 S. E. 437). It is, however, well settled that where a landlord retains a qualified possession of and a general supervision over the rented premises, by placing an agent in charge thereof, no notice from the tenant is required. See *Guthman* v. *Castleberry*, 49 *Ga.* 272 (1); *White* v. *Montgomery*, 58 *Ga.* 204; *Monahan* v. *National Realty Co.*, 4 *Ga. App.* 680 (62 S. E. 127); *Florence* v. *Northcutt*, 145 *Ga.* 265 (88 S. E. 933). It will be noted that the petition alleges that the plaintiff occupied a storeroom which she rented from the defendant, located on the ground floor of the building; and that it was from a defective sprinkler head in the autommatic fire-protection system, in the second story immediately above plaintiff's store, that the water came which damaged the goods. The water thus flooded the store for one and a half or two hours, although it might have been cut off in two minutes by proper diligence on the part of the agent in charge, or by the plaintiff if she had known where or how to turn it off. According to the allegations, the plaintiff had no control over the operation of the fire-protection system, but to the contrary the defendant retained possession of the building, by placing in charge thereof an agent who had general supervision over the entire premises, and whose duty it was to look after the fire-protection system. It will be further observed from the allegations of the petition that the fire-protection system was so constructed that the sprinkler heads were closed with a substance or composition which would melt "at about 165 degrees of heat," thereby automatically causing them to open when exposed to heat of this intensity, allowing the air in the pipes throughout the entire building to escape, and the water from the city waterworks system would then enter the pipes

and be forced out into said building, through the open sprinkler head; and that there was a gong located outside of the building and so connected with the fire-protection system that when the pipes from any cause became filled with water (as on this particular occasion) the same would automatically sound an alarm, the purpose of which was to warn the occupants of the building, and others, by giving notice of the presence of water in the pipes on account of an actual fire or for some other reason. The petition clearly shows that there was no fire on the particular occasion when the damage complained of occurred, but that the flow of water into the pipes and out through the open sprinkler heads into plaintiff's storeroom was occasioned by the defective condition of the sprinkler heads; and that the failure to arrest the flow was caused by the defective gong, and the negligence of the defendant's agent in not cutting off the water, which could have been accomplished in two minutes, and the resulting damage thus prevented almost if not entirely. The allegations, if true, are sufficient to charge the defendant with notice of the defective condition of the fire-protection system, which caused the damage to plaintiff's merchandise; and we can not hold, on demurrer, that the facts alleged in the petition do not state a cause of action.

Taking the petition as a whole the plaintiff clearly alleged that she could not have prevented by the exercise of ordinary care the damage resulting to her from the flow of water through the defective apparatus, as she had no knowledge of its construction or operation, and had reason to rely upon the diligence of the defendant through his agent in maintaining the same in proper condition and in protecting her from any defects therein.

The plaintiff alleged "that her stock of goods was specially damaged," and gave in detail the articles or things alleged to have been damaged and the amount of damage she claimed on each of said articles or things. Construing this paragraph in connection with the entire petition, how and in what manner her stock of goods was "specially damaged" may be clearly ascertained, and the allegations as made sufficiently indicate the nature and character of the injuries sued for, and the amount thereof, to withstand the particular special demurrer that the petition did not show "that the defendant was responsible for their loss, nor that the same was

a total loss." Clearly no total loss was intended to be or was alleged.

The 2d headnote needs no elaboration. Except in the particular there pointed out, the petition was not open to the precise criticism made in any of the grounds of the special demurrer.

*Judgment reversed. Jenkins and Luke, JJ., concur.*