35303. NUNNALLY *et al. v.* SHOCKLEY.

DECIDED MARCH 14, 1955—ADHERED TO ON REHEARING APRIL 1, 1955.

*Roberts & Roberts, William P. Whelchel,* for plaintiff in error.
*A. M. Kelly, D. M. Pollock,* contra.

NICHOLS, J. 1. The petition does not show that the defendants had parted with possession of any part of their building. Hence, the defendants' alleged liability is simply that of owners or occupiers of land to an invitee for "failure to exercise ordinary care in keeping the premises and approaches safe." Code § 105-401. The petition alleges facts sufficient to raise a jury question as to whether the defendants breached their duty, to the plaintiff's injury, and the court did not err in overruling the demurrer to the petition.

2. The evidence presents a case differing from that alleged. It appears that Crossley and the plaintiff were tenants of the defendants, occupying different parts of the building; that the plaintiff entered Crossley's store as a customer intending to buy ice cream; that Crossley had never noticed anything wrong with the threshold until five or six hours after the plaintiff was injured; and that neither Crossley nor his employee, Ridder, had ever reported any defects in it to anyone. The threshold board, or door sill, or saddle, was under the "permanent door," and the screen doors were beyond it, towards the lobby of the building. The janitor of the building, who swept the lobby, halls, and steps, did not have anything to do with cleaning the store; Crossley cleaned it. The defendants, two officers of the Trust Company of Georgia who were in charge of renting and maintaining the property, and an officer of Nunnally Lumber Company, authorized to make emergency repairs, all testified that they had been given no notice of the defective threshold, and did not know about it.

The invitee of a tenant is controlled by the rules governing the tenant as to the right of recovery for injuries arising from failure to keep the premises in repair. *Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462, 464 (2) (118 S. E. 694). "When the tenant is in the exclusive possession and control of the rented

premises, the landlord is under no duty of examining the same with a view to ascertaining whether or not repairs are needed, unless requested so to do." *Ocean Steamship Co.* v. *Hamilton,* 112 *Ga.* 901 (2) (38 S. E. 204) ; *Stack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615). And where the landlord has neither possession nor right to possession, he must have reasonable notice of the defective condition of the premises before he can be held liable for injuries resulting to his tenants or their invitee from such defects. *Shattles* v. *Blanchard,* 87 *Ga. App.* 15, 16 (73 S. E. 2d 112) ; *Echols* v. *Patterson,* 60 *Ga. App.* 372 (4 S. E. 2d 81).

While the defendants may have retained a qualified possession of the steps, halls, and lobby of their building, the defective threshold was located beneath the door to premises which were rented to Crossley and to which he had the right of possession. Code § 61-101. It was not shown that the defendants had any notice of the defect, and hence they were not liable for the plaintiff's injury caused by their failure to repair the defect.

The fact that the defendants had authorized Trust Company of Georgia and Nunnally Lumber Company to make repairs is immaterial, since the duty of the defendants' agents was no greater than that of their principals: to repair defects on reasonable notice. The defective threshold, being on premises to which the defendant landlords had no right of entry, was not a defect which should have been discovered by them in the exercise of ordinary care.

The verdict for the plaintiff was unauthorized by the evidence, and for this reason the court erred in overruling the motion for a new trial. The rulings complained of in the special grounds of the motion are not likely to recur, and so these grounds of the motion are not passed upon.

*Judgment affirmed in part and reversed in part.*

On motion for rehearing the original judgment of affirmance in part and reversal in part is adhered to. *Felton, C. J., Gardner, P. J., Townsend, J., and Carlisle, J., concur. Quillian, J., dissents.*

QUILLIAN, J., dissenting. There can be no question as to the soundness of the holding of the majority opinion that the landlord is not ordinarily required to inspect the premises the possession and control of which he has yielded to a tenant, and

that in such circumstances, in the absence of proof that he was put on notice of such defect, he is not liable to an invitee of the tenant caused by the failure to repair. I also agree with my colleagues that, under authority of *Dobbs* v. *Noble*, 55 *Ga. App.* 201 (189 S. E. 694), the rule is applicable even to structural defects in a structure built by the landlord's predecessor in title.

I do not agree that the general rule is necessarily applicable in this case, for the reason that there was evidence from which the jury could have legitimately concluded that the landlords had retained such qualified control over the rented premises that they were chargeable with the. duty to inspect the store room rented to the tenant Crossley and were responsible for injury to the plaintiff arising out of a failure on their part to perform that duty.

The Eulalia Building was originally owned by the landlords' father, and was inherited by them. At the time Mr. Crossley was a tenant occupying the store room in the building. The evidence does not disclose what the rental contract between the father and the tenant Crossley provided as to inspection of the premises. Nor does it appear that, upon the building becoming their property, the landlords entered into any contract of rental with Mr. Crossley. The evidence shows that he remained a tenant and continued to occupy the store building. There was no evidence as to whether the rental contract originally entered into between the landlord's father and the tenant Crossley reserved to the original landlord the right of inspection of the premises or what the agreement between Crossley and the defendant was in respect to that matter.

Authority for the proposition that, where a landlord retains qualified possession or control of premises in person or by agent, he is liable for defects that were discoverable by reasonable diligence are: *Smith* v. *State Mutual Ins. Co.*, 40 *Ga. App.* 747, 750 (151 S. E. 554); *Monahan* v. *National Realty Co.*, 4 *Ga. App.* 680 (62 S. E. 127); *Marr* v. *Dieter*, 27 *Ga. App.* 711 (2) (109 S. E. 532); *Davis* v. *Hall*, 21 *Ga. App.* 265, 268 (94 S. E. 274); *Augusta-Aiken Ry. Co.* v. *Hafer*, 21 *Ga. App.* 246 (94 S. E. 322).

One of the ways a landlord retains qualified control of the rental premises for the purpose of inspection is by appointing an

agent and empowering him to perform that function. *Smith* v. *Stovall*, 84 *Ga. App.* 103 (3) (65 S. E. 2d 640).

The evidence does disclose that the landlords entered into an agreement with Trust Company of Georgia, by the terms of which they agreed for the trust company to take over the control of the entire building, to collect the rents from the same, and keep it in repair. The parts of the contract material to consideration of this case read: "Principals are the owners of a certain properties fully identified in "Exhibit A" hereto attached. Principals desire to place said properties in agent's custody for management and servicing. Agent is willing to undertake said service and duties imposed hereby, upon the terms set forth herein.

"Now, therefore, it is mutually agreed by and between principals and agent as follows:

"1. Principals hereby employ agent, who accepts said employment, to render the following services in connection with said properties:

" (a) To hold said properties in its custody and control and others that may be added.

" (b) Generally to represent principals in the management thereof.

" (c) To determine the tenants and rates of rents they pay but agent shall make no rental or lease contract for longer than one (1) year without first obtaining written approval of principals.

" (d) To collect the rents and other income, if any, from the properties placed in this agency and quarterly to distribute equally to the principals the net income, after reserving such amounts thereof as agent estimates to be proper for repairs, ad valorem taxes and other expenses.

" (e) To employ Nunnally Lumber Company and other parties to make repairs to said properties but such repairs shall not exceed a total of $250.00 in any one month without written approval first being obtained from principals for any repairs in excess of the $250.00 per month. Agent shall hold said repairs to what agent considers to be a reasonable minimum in line with the present policy under which the properties are being operated unless agent is otherwise instructed by principals.

"(f) From funds in the agency account, the agent is authorized to pay the ad valorem taxes, insurance premiums and other similar fixed charges as they become due.

"(g) To keep accurate books of account on all transactions in respect to said properties and funds received and to render semi-annually detailed statements to principals.

"(h) To supply from time to time such information as agent may possess for the purpose of having income and intangible tax returns prepared for principals.

"(i) To prepare ad valorem tax returns for the real estate managed hereunder by agent."

The contract constituted an admission in writing that the defendants had the right to inspect the building, including the Crossley store, and the corresponding liability for failure to exercise ordinary care in discovering defects and making necessary repairs.

It is not necessary for the parties in the case to have been originally concerned in the transaction between the defendants and the Trust Company to avail themselves of the defendants' written admission that they had retained the right incident to a qualified possession of the entire Eulalia Building. Nor was it essential that the contract state in express terms that the defendants retained such right. The language of the contract is a clear assertion on the part of the defendants both that they had and were exercising that right to inspect the store space occupied by Crossley.

In my opinion there was ample evidence for the jury to have predicated the verdict returned by them in the plaintiff's favor.