BOONE COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION ET AL. *v.* PUBLIC SERVICE COMMISSION OF INDIANA ET AL.

[No. 29,655. Filed June 5, 1959.]

526

*Paul Y. Davis, Harvey B. Hartsock, J. D. Wright, Davis, Hartsock & Wright,* of counsel, all of Indianapolis, *Claud D. Raber,* of Danville, *Willett H. Parr, Jr.* and *Parr, Parr & Parr,* of counsel, of Lebanon, for appellants.

*Edwin K. Steers,* Attorney General, *Frank E. Spencer* and *Harriette Bailey Conn,* Deputy Attorneys General, for appellee Public Service Commission.

*Paul G. Jasper, Charles W. Campbell,* both of Plainfield, *Alan W. Boyd, Jerry P. Belknap, John A. Kendall, Barnes, Hickam Pantzer & Boyd,* of counsel, all of Indianapolis, for appellee Public Service Company of Indiana, Inc.

*Howard C. McFaddin,* of Rockville, for appellee Parke County Rural Electric Membership Corporation.

PER CURIAM.—The action from which this appeal is taken was first commenced in the trial court to set aside an order of the Public Service Commission re-

fusing to grant the Public Service Company of Indiana, Inc. a rate increase upon petition in 1955. After a trial, additional evidence produced therein was certified to the Commission with directions to reconsider its action in view of the additional evidence. Burns' 1951 Repl., §§54-436—54-437.

The Commission accordingly by order on March 9, 1956 modified its previous order denying an increase and found the present rates of the company were "insufficient to provide the fair return herein found, and the petitioner should, therefore, be authorized to increase its net operating income in the amount of $1,718,857."

In arriving at the necessary figure for a fair return for future operations, it relied upon accounting figures available for December 31, 1955 level of operations along with other evidence. In the March 9 order the Commission did not fix the rate, but stated that a hearing should be held within 90 days for that purpose. On March 21, the Commission made a further "supplemental order" declaring an emergency and reciting the necessity for immediate relief pending a final determination of the rate. By this order all rates were increased across the board by a percentage of 5.35 to raise the additional required revenue pending litigation.

We point out here that appellants, after they intervened, contended that there was no evidence to support this emergency order and that a hearing should have been held thereon. With this contention we cannot agree, since Burns' §54-712 specifically authorizes such emergency rate action by the Commission pending litigation and there was evidence before the Commission that the "net income is not *now* sufficient to provide a fair return." (our italics) A

utility, as a matter of law, cannot be required to submit to a "day by day confiscation of its property." *State ex rel. Pub. Serv. Com.* v. *Marion C. Ct.* (1951), 230 Ind. 277, 289, 103 N. E. 2d 214.

As the Supreme Court of the United States has said: "Present confiscation is not atoned for by merely holding out the hope of a better life to come." *West Ohio Gas Co.* v. *Public Utilities Com.* (1935), 294 U. S. 79, 83, 55 S. Ct. 324, 79 L. Ed. 773; *Pub. Ser. Com.* v. *Ind'p'ls. Railways* (1947), 225 Ind. 30, 72 N. E. 2d 434.

After the across the board temporary rate increase under the order of March 21, one of the appellants (Boone County REMC) in this appeal started a separate action in another circuit court (Boone Circuit Court) challenging the rate increase under the order of March 21, which would be applicable to it on the grounds first, that it had no notice thereof, and secondly, that it had a separate special contract as a utility with the Public Service Company of Indiana, Inc. for the furnishing of electrical energy, and by reason thereof, it was placed beyond the reach of the ordered across the board rate increase.

In granting the writ of prohibition against the Boone Circuit Court in the case of *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc.* (1956), 236 Ind. 202, 138 N. E. 2d 4, we there held that the appellant, being a rate payer, was bound as any other rate payer would be by the notice provided by the statute to all rate payers, which notice the record shows was duly given in this case. We further held that the statute made no distinction in that respect between the wholesale and retail purchasers of electrical energy among rate payers; that since all such rates and charges from both wholesale and retail sales were part of the total rate structure, it thereby affected the fair return upon

the rate base; that any adjustment in one rate or schedule would affect the entire rate structure. We need not here again review the authorities and reasoning by which we come to such decision, but refer to the opinion for such particulars.

At the time the decision was rendered in the *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc. Case* the appellants had not intervened in the present case before us on appeal. The record shows that on November 14, 1956 and January 5, 1957 the appellants intervened and filed complaints and again challenged in this action the various orders of the Public Service Commission on many of the same issues we considered in the above case, and objected to the rate increase granted the Public Service Company of Indiana, Inc. After the intervention the Commission held a rate hearing on May 22, 1956, in which the intervenors (appellants) participated. Following this hearing, on December 14, 1956, the Public Service Commission, in an order, approved a general rate schedule and adjusted the across the board rate increase among the various rate payers, as high as an increase of 8.65% for residential and domestic sales; 4.8% for farm and rural sales; and the lowest of 3.76% for REMC sales. The December 14, 1956 order was subsequently modified by an order of August 23, 1957 in certain minor details.

The appellants (intervenors) separately challenge the orders of March 9 and 21, and December 14, 1956 (as modified by order of August 23, 1957) under their motion for a new trial on the grounds that the decision of the trial court is contrary to law and not sustained by the evidence.

While reference is made to the separate orders, there is, in fact, but a single final order which embodies the

various modifications during the proceedings. Burns' 1951 Repl., §54-437.

The issues here are in some respects the same as those presented in the above case of *State ex rel. Pub. Serv. Comm. v. Boone C. C., supra.* The question is raised as to the notice to which the appellants are entitled, if any, other than that given under the statutes to all rate payers that a rate hearing is to be held. Appellants also stress the fact that they had special contracts for the furnishing of electrical energy to them as utilities, from the Public Service Company of Indiana, Inc. In addition, the appellants take issue with the methods used by the Commission in computing its figures in its finding as to what is a reasonable net operating return for the purpose of rate fixing. One of the contentions in that connection is the manner in which income tax liability is treated.

We start with the general principle that so long as there is any substantial evidence to support the rates as fixed by the Commission as reasonable, the judicial branch of the government will not interfere with such legislative functions. We have no power or authority to substitute our personal judgment for what we might think is fair or reasonable in lieu of the administrative judgment of the Public Service Commission. *Pub. Serv. Comm. et al. v. City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308.

No attack was made on the order of March 9, 1956 until January 5, 1957 when the appellant, Hendricks County REMC, filed its petition to intervene, attacking the orders of both March 9 and 21, 1956. Thereafter all appellants filed supplemental complaints challenging the order of December 14, 1956.

In a consideration of the objections to the Commission's orders of March 9 and 21, 1956 we should point

out that a party asking to intervene must exercise diligence and takes the case as he finds it at the time of intervention. A party may not sit by after notice and an opportunity to oppose an action and later claim error. Here nine months elapsed before the appellants intervened to object to the prior orders of March 9 and 21, 1956. Burns' 1951 Repl., §54-432; Burns' 1946 Repl., §2-222; *Abeele* v. *Ruse* (1942), 112 Ind. App. 596, 44 N. E. 2d 235.

Regardless, however, of this weakness in the appellants' position we shall give consideration to the orders prior to the one of December 14, 1956.

The appellants raise no issue as to the fair value figure of the rate base, but direct their attack against the order of the Public Service Commission of March 9, 1956 on the point that when the Commission made the rate increase on the basis of the December 31, 1955 operating figure, it estimated that the gross operating revenue would be $68,003,416.00 for the entire year of 1956, whereas, in fact, it was $4,000,000.00 more (figured under the old rates) when the figures were later available at the end of the year 1956. Appellants argue from there that this increase in gross revenue was sufficient to increase the net revenue in the same proportion and therefore no additional rate increase was necessary. In other words, the appellants are urging a hindsight review as a standard for judging the actions of the Commission, although the Commission did not, at the time, have the benefit of such retrospection in its holding.

Appellants pass their judgment on the order of the Commission (March 9, 1956)—over nine months later —(January, 1956) and now urge the Commission is in error for not anticipating an increase in gross revenue. If an order is reasonable under

the limited facts available at the time it is made, subsequent changes in conditions cannot make it retroactively erroneous.[1] *Pacific Gas & Electric Co.* v. *R. R. Comm.* (Cal. 1938), 26 Fed. Supp. 507. However, there is no evidence that the order was erroneous, although we assume the gross revenue was greater than anticipated.

Boiled down, appellants' contention amounts to the proposition that a rate order can be set aside if it can be shown that in the period following a rate adjustment, a substantial increase in *gross revenue* has occurred above the adjusted operating level upon which it was based, without a showing of what affect such increased gross volume of business has had, if any, upon the net income or fair return, as related to the rate base. Factors such as operating expense cannot be disregarded in fixing a fair return; neither can changes which took place in the rate base during the 1956 period. The fact is, the rate base is never the same for any length of time. It changes with every transaction of the utility. It changes from day to day, even from minute to minute, when we consider such influences as depreciation.

In this case some increase in net income has occurred as a result of more gross revenue, but additions in new property to the rate base of $6,500,000.00 have been so large that the actual figures show the rate of return on the higher rate base has decreased notwithstanding increased net income.

These figures were before the Commission when the additional transcript went back in August, 1957. The Commission, we may assume, saw and took into con-

---

1. Part of the evidence upon which the Commission acted actually showed net income as of December 31, 1955 level had declined $11,000.00 from the previous June 1 level, in spite of the fact that during the same period gross revenue had increased $4,000,000.00.

sideration this trend. The supplemental order of August 23, 1957 recites that the entire proceedings were reviewed because of a complete change in membership of the Public Service Commission.

Estimates of the Commission can only be reasonable approximations. No one can know with exactitude what the future holds. The rate making process ■ involves a balancing and weighing of many factors, including general economic and business conditions of the future period and its affect upon the other estimates. Arriving at such estimates and judgments for rate making is the job for which the administrative body, not the courts, was created. *Pub. Ser. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308.

Appellants further contend that the Commission was in error in the treatment of accruals for deferring federal income tax. They contend that an item of ■ $2,609,000.00 should, as a matter of law, have been added to $16,531,143.00 in determining net operating income under Internal Revenue Code, 1954, Sections 167 and 168 (26 USCA, §§167, 168). An accelerated amortization of certain specified facilities upon the approval of the federal government may be used for income tax purposes over a five-year period instead of over the normal expected life of the property. In other words, the utility had the opportunity to deduct for income tax purposes within a five-year period a sum greater than equaled the actual depletion during that period. In order to spread this depletion allowance over a uniform period, including the later years when it actually occurred, the Commission permitted an accounting procedure by the utility to set aside a reserve out of the income tax savings made for the purpose of satisfying and taking care of in-

creased taxes because of no allowance for the depletion or depreciation in years beyond the five-year period. The appellants complain because they are not getting the full benefit of the tax savings offered by the federal government at the present time which, in fact, is made at the expense of rate payers in the subsequent years when the depreciation will continue without the tax allowance and the taxes will be proportionately higher. Any concept which treats such an unusual tax reduction as a "saving" to belong solely to the five years allowed, is totally out of touch with reality. The right and power of the Commission to authorize an accounting system under which reserves are set up for future tax increases, losses or contingencies is an administrative matter and, so long as such procedure is within reason and prudence, the trial court has no right to interfere. The Commission is fully authorized by statute to determine the accounting system and procedure to be followed. This includes specifically reserves for, and rates of depreciation, and the use of such reserves. Burns' 1951 Repl., §§54-207; 54-216—54-221. We judicially know that good accounting practices require reserves for losses and contingencies which accrue in the future because of current operations.

The purpose of Congress in enacting the provision of Internal Revenue Code with which we are concerned was to encourage expansion and construction in the industry. It was recognized that the accelerated amortization provision was not in harmony with the actual depreciation rate. Since the allowance for depreciation will be eaten up, so to speak, during five years, there will be no deductions for depreciation in the years thereafter for tax purposes, with the result that taxable income will be higher. The rate payers thereafter would bear more than their share of taxes because of

the abnormal amount of depreciation taken in the first five years. Unless deferred federal income taxes are normalized, the Commission could not determine with any accuracy the amount of net operating income which would constitute a fair return. In cases where the point raised has been before the courts, the decisions have been adverse to appellants. *Bd. of Supervisors, etc.* v. *Va. Elect. & Power Co.* (1955), 196 Va. 1102, 87 S. E. 2d 139; *City of Detroit* v. *Federal Power Com. et al.* (D. C. Cir. 1955), 230 Fed. 2d 810; *Chicopee Mfg. Co. et al.* v. *Public Service Co.* (1953), 98 N. H. 5, 93 A. 2d 820.

There is no merit, therefore, in the appellant's contention that the Commission was in error in excluding from income the provisions for deferred federal income tax in the amount of $2,609,-000.00.

We come next to the contention that the Commission erred in subjecting the contract sales of electrical energy to the appellants, REMC, to its various rate making orders. In other words, the appellants contend that by reason of special contracts which they had with the Public Service Company of Indiana, Inc. or the furnishing of electrical energy to them as a utility and not as a domestic consumer, they were not subject to the ordinary rate making procedure. This point is raised as to all the orders.

We determined in the case of *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc. supra,* that the statute made no distinction in the proceedings before the Commission between rate payers who were consumers and those who purchased at wholesale. They all alike were subject to rate-making supervision by the Public Service Commission. *Midland Realty Co.*

v. *Kansas City P. & L. Co.* (1937), 300 U.S. 109, 57 S. Ct. 345, 81 L. Ed. 540.

We need not here go into detail with reference to that decision, except to elaborate on certain features which were not there considered, but are presented to us by the record here. Burns' 1951 Repl. §54-423 provides that the Commission shall have authority over "any rates, tolls, charges." (See also §54-105) Section 54-509, Burns' 1951 Repl. specifically prohibits utilities from making special contracts with any other utility for the rendering or procuring of services for rates other than those prescribed in its filed schedule approved by the Commission except in emergencies.[2] All the contracts of the appellants therefor are made subject to the approval and regulatory power of the Commission by virtue of the statute. Supplying electricity to other utilities for resale to the public is a public utility service. *Public Serv. Comm.* v. *Panhandle East. Pipeline Co.* (1947), 224 Ind. 662, 71 N. E. 2d 117; *Shedd* v. *Northern Indiana Public Service Co.* (1934), 206 Ind. 35, 188 N. E. 2d 322; *Lowe* v. *Indiana, etc., Power Co.* (1926), 197 Ind. 430, 151 N. E. 220.

When we look at the record here we find that the contracts in question contain the following provision:

> "9. Should any change in the rate provided for in section three hereof be ordered by the Public Service Commission of Indiana, payment of our service by customer to company as provided for in section three hereof, shall thereafter be made upon the basis of such new rate as changed and approved by the Public Service Commission."

The contract further provided "no such contract shall preclude the right of the Commission to make revision

---

2. Excepted are municipally owned utilities. Burns' 1951 Repl. §54-607.

in the rates or general terms and conditions of service under this classification if such changes appear reasonable and necessary before the expiration of such contract." These contractual provisions, *to which the appellants have agreed,* fully answer their contention that the Commission has no right to disturb their contractual relationship with the Public Service Company of Indiana, Inc.

The appellants make the further contention that the rates were confiscatory with respect to rate payers. Since this contention is based primarily upon the points previously urged by the appellants and in which we find the Commission did not err, there is no reason for any further consideration with respect to that point.

The judgment and discretion exercised by the Commission in arriving at its final orders of March 9 and 21, 1956 and December 14, 1956 (as modified on August 23, 1957) are supported by the evidence and not contrary to law.

The judgment of the trial court is affirmed.

NOTE.—Reported in 159 N. E. 2d 121.