TWIN CITY REALTY CORP. ET AL. *v.* CLAY UTILITIES, INC. ET AL.

[No. 569A91. Filed April 27, 1970. Rehearing denied June 8, 1970. Transfer denied December 9, 1970.]

Douglas D. Seely, Jr., Jones, Obenchain, Johnson, Ford & Pankow, South Bend, for appellant.

Robert L. Miller, South Bend, for appellees.

LOWDERMILK, C.J.—These proceedings were initiated by Clay Utilities, Inc.'s filing of a petition with the Public Service Commission for recertification as both a rural water and rural sewage utility as a result of the Combined Sewage Disposal and Water Act of 1963 (Burns' Ind. Stat. §§ 55-4601-4615, inclusive) being declared unconstitutional by this court in City of Ft. Wayne, et al. v. Maplewood Park Utilities, Inc., et al. (1968), 143 Ind. App. 507, 241 N. E. 2d 805, transfer denied. Appellants filed a petition to intervene as interested

parties and asked for emergency relief in the form of a reduction of certain "hook-on" charges pending final adjudication that such charges were reasonable or unreasonable under the circumstances. As an alternative, to protect all parties, appellants prayed that if the utility were allowed to continue the collection of these charges ($300.00 per residential unit) that it be required to post a bond to assure a refund (*bond premium to be paid by appellants*) if the charges were finally found unreasonable. Since the Public Service Commission can neither enter a retroactive order, nor award damages, appellants argued their request for emergency relief was their only available means of recourse.

The issue determined by the Public Service Commission, from which appeal was sought, is whether or not the appellants were entitled to the emergency relief sought in their intervening petition.

Appellee utility sought by its petition recertification as a separate rural water and rural sewage utility, approval of and ratification of its present rates, rules, contracts and financing. Appellants, as intervenors, did not challenge the utility's request for recertification; but did challenge its rates, rules, contracts, et cetera, and specifically sought emergency relief of the utility's $300 per residential unit hook-on charge.

On May 8, 1969, after a hearing before an examiner, a ruling was handed down on appellants' request for emergency relief, and a pre-hearing conference was set for June 26, 1969, and the Commission agreed to a presentment by the utility in order for it to be recertified so as to continue operation with a full rate hearing to be held after pre-hearing conference.

At the hearing held on May 8, 1969, appellants introduced evidence to justify their intervention and the emergency relief requested.

After the hearing a single member of the Commission entered the following record:

"I hereby, considering the additional evidence you have put in the record, overrule your emergency relief requested."

This ruling was appealed to the full Commission, which, by unanimous vote, sustained the examiner's ruling denying emergency relief to the appellants.

On the above facts and record this appeal was timely perfected to this court.

Thereafter, appellee, Public Service Commission of Indiana, filed its motion to dismiss as party appellee, which motion was sustained by this court on August 8, 1969, and the action was, at that time, dismissed as to the Commission.

The appellee, Clay Utilities, Inc., timely filed its motion to dismiss, which motion reads as follows:

"Clay Utilities, Inc., named as one of the Appellees in the above-entitled matter moves that this attempted review of an order of the Public Service Commission of Indiana be dismissed, and respectfully shows the Court:

"1. Appellants' transcript and assignment of errors were filed in this Court on June 26, 1969, and therefore this Court has jurisdiction to rule upon this motion.

"2. That this Court has no jurisdiction of the subject-matter of this attempted review, and therefore has no jurisdiction except to dismiss the same, all as hereinafter set forth.

"3. As shown by the transcript and assignment of errors and Appellants' brief, this is an attempted review of an interlocutory order entered by the Public Service Commission of Indiana. By such interlocutory order the Commission denied a request of Appellants that certain charges be reduced pending a final adjudication as to whether they are reasonable or, in the alternative, that this Appellee post a bond to refund charges paid prior to final adjudication if they were finally found unreasonable.

"4. There is no statutory authority granting a right to judicial review of such interlocutory orders; the only right of review being as to final decisions, rulings or orders.

"WHEREFORE, said Appellee respectfully prays that this attempted appeal or review be dismissed."

Appellee, Clay Utilities, contends the ruling of the Commission, *supra*, is an interlocutory order from which no appeal will lie because the statute does not expressly provide therefor. Appellee further contends that not every order and ruling of

the Commission is subject to judicial review, but only final orders, rulings and decisions.

Appellee, Clay Utilities, Inc., further contends that should the law be held to be otherwise, then there could be an unlimited number of appeals in each and every case before the Commission; the Commission would be rendered almost helpless, and, in effect, this court would be substituted for the Commission.

The case of *American Vitrified Products Co.* v. *Public Service Comm.* (1961), 131 Ind. App. 378, 176 N. E. 2d 145, is in point on this question. In this case the court said:

"An 'appeal' from an order of the Commission differs from an appeal of a final judgment in civil or criminal cases. The Commission's order establishing rates was not a judgment, but an administrative order, and the cases relative to judgments of courts are not applicable. *Public Service Commission* v. *Cleveland, etc. R. Co.* (1919), 188 Ind. 197, 121 N. E. 116. Although it may be termed an 'appeal,' this expression has been construed to mean 'judicial review' to determine whether the administrative tribunal, in this case the Public Service Commission of Indiana, has acted within the scope of its powers. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Public Service Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 84, 131 N. E. 2d 308; 1 West's Indiana Law Encyclopedia, Administrative Law and Procedure, ch, 3, § 62, p. 191. The distinction is important in that it points out the difference between the final judgment of a trial court and the final order of an administrative tribunal. The former is much more strictly construed than the latter.

"Although the Commission's order of May 2, 1958, is designated as an 'interlocutory order,' such designation is not conclusive. We must look to the substance of the order, and not its form, to determine its finality. If an order of the Commission constitutes an unequivocal assertion of power of its jurisdiction and authority over a party before it, so that there is an initial and integral step of a regulatory scheme, and if a party is adversely affected by the order, and the verbiage is such that it can only be construed as a final declaration of the Commission, it will be sufficient to present to this court jurisdiction under § 54-443, Burns' Ind. Stat., 1951 Replacement (Supp.) *supra; Boone Co.*

*R.E.M.C. et al.* v. *Public Serv. Comm.* (1958), 129 Ind. App. 175, 184, 185, 155 N. E. 2d 149.

"In its order of May 2, 1958, the Commission made nine detailed Findings directed to the merits of the case, and specifically found that the proposed schedule of rates and charges submitted by appellee, as modified, was non-discriminatory, reasonable and just. It approved them and ordered them put into effect as soon as a schedule had been properly filed after the order was approved. In so far as ratepayers are concerned, nothing can be more final or adverse to them than an increase of rates which goes into effect immediately.

"The fact that the order declared the Commission would retain jurisdiction of the subject-matter and of the parties for the purpose of issuing further orders is insignificant, as the statute under which the Commission was created and exists provides that the Commission may at any time, upon notice to the public utility and after opportunity to be heard, rescind, alter or amend any order fixing rates previously ordered by the Commission. Section 54-427, Burns' Ind. Stat., 1951 Replacement.

"The Commission also has power, when deemed necessary by it, to temporarily amend, alter or, with the consent of the public utility concerned, suspend existing rates in case of an emergency. Section 54-712, Burns' Ind. Stat., 1951 Replacement. Thus, the Commission, as a matter of law, has continuing jurisdiction over the subject-matter and parties to this cause, regardless of its order."

Payment by appellants of the existent hook-on charges is conceded by appellee to be unrecoverable by appellants even in the event the Commission subsequently reduces such charges.

To this extent, therefore, the Commission's order denying emergency relief on the amount of hook-on charge reduction is just as final and appealable as was the order in the *American Vitrified Products Co.* case, *supra.*

Burns' Ind. Stat. § 54-443, reads as follows:

54-443. Appeal to Appellate Court from final decision, ruling or order of commission-Transfer to Supreme Court-Assignment of errors.—"Any person, firm association, corporation, city, town or public utility adversely affected by any *final* decision, ruling, or order

of the public service commission of Indiana, may, within thirty [30] days from the date of entry of such decision, ruling, or order, appeal to the Appellate Court of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise herein provided, and with the right in the losing party or parties in the Appellate Court to apply to the Supreme Court for a petition to transfer the cause to said Supreme Court as in other cases. An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered." (Our emphasis.)

Appellants' intervening petition was, briefly, as follows:

1. The Intervening Petitioner, Twin City Realty Corporation, is a corporation and has developed the Winding Brook Park area and is continuing to develop the same in an unincorporated residential area in St. Joseph County, Indiana.

2. The Applicant seeks authority to continue rendering sewage and water utility services to Winding Brook Park area as developed and to be developed, and further seeks approval of its rates, rules and regulations respecting such utility services.

3. Twin City Realty Corporation, referred to herein as the Developers, have partially completed Winding Brook Park and Applicant now provides water utility service and sewage disposal service to 169 homes therein, as well as water service to 36 other homes or lots in said subdivision. Developers are developing additional lots and there will be approximately 800 to 900 homes when completed; all will need either water service or sewage disposal service, or both, from the Applicant.

4. The Winding Brook Park area is served as a unit; the water is furnished from wells drilled by Applicant's predecessors on lands donated by the Developers in Winding Brook Park. Sewage from Winding Brook Park flows into a collector extended by the City of Mishawaka, at its expense, to the

edge of the said development, where it connects with mains which the Developers installed within the development.

5. The Applicant's rates call for $150 for connection for water service and a like amount for sewage disposal service, in addition to a $12.00 inspection fee for each new connection. Developers contend such connection charges are unjust, unreasonable and confiscatory.

6. Applicant has made no substantial investment in utility plant or property to serve appellants or any of the Winding Brook Park area, which justifies such connection charges and the cost of rendering the services plus a reasonable rate of return does not justify them. The Developers furnished and installed, at their own expense, all land, mains, service pipes and other lines within Winding Brook Park in order to obtain service from the Applicant and its affiliate, Surburban Utilities, Inc., which service was rendered under the Sewage Disposal and Water Acts of 1963, which was later held invalid as unconstitutional class legislation by this court.

7. Developers have expended $139,028.62 for the installation of water and sewage mains and related facilities in Winding Brook Park as of April 28, 1969, and Applicant has made no substantial investment in rendering service thereto. Developers will expend $134,900 for installation of water and sewer mains and related facilities in extending service to the next section of the subdivision and the Applicant will make only a very insubstantial investment, if any.

8. The Developers contend that the only foreseeable expense in connection with the attachment of new service in Winding Brook Park is that incident to opening additional accounts, which does not exceed $2.50 each.

9. Developers contend that Applicant's schedule of proposed rates and charges should be reduced to $2.50 connection charge per service connection, or to such lesser amount as reflects Applicant's actual cost to connect an additional customer.

10. Developers allege that they will expend $28,000 in the near future for connections on Applicant's sewers and water mains; that an emergency exists which requires temporary amendment of Applicant's schedule of rates and charges.

11. Developers further allege that $2.50 per connection is adequate, or, in the alternative, the Applicant should be required to post a bond with proper surety, conditioned on Applicant's refunding any amounts paid by the Intervening Petitioners or other similarly situated after the date of the emergency order in excess of those finally found by the Commission to be reasonable and just.

Numerous affidavits were admitted into evidence solely to show the right to intervene, except that of George S. Cressy, which was received as evidence to support the request for emergency relief.

The evidence before the Commission is briefly summarized as follows:

This evidence takes the form of a verified petition to intervene and an affidavit of George S. Cressy and Edward Everett. The petition to intervene established the fact that appellants were developers of a residential subdivision within the area in which appellee utility was certified to provide water and sewage services. This petition also established the number of homes and lots receiving such water and sewage service. These various homes using such service were supplied by wells put down by appellee-utility's predecessors. All of the mains, laterals, hydrants, et cetera, within the development were installed at the expense of Twin City Realty Corporation.

This petition to intervene established also that as of April 28, 1969, appellants had expended $139,028.62 for installing water and sewer lines and will very shortly expend approximately the same amount in the next section of the subdivision.

Under the rates and charges previously approved for appellee utility pursuant to the 1963 Act was a tariff item of $150 per line hook-on charge, together with a $6.00 inspec-

tion fee, which, for combined services, was $300 hook-on and $12 inspection fee.

The purpose of the intervening petition was to reduce the hook-on charge to $2.50, the cost of setting up an account card, or, in the alternative, allow appellee utility to collect the $300 combined charge but post a bond to cover such payments to guarantee refund of any overcharge should the Commission, upon the full hearing, reduce the charge either to the amount requested or some other amount less than that being collected. This petition was verified by the president of Twin City Realty Corporation and George Cressy and Edward Everett as co-partners.

The affidavit admitted into evidence reiterated a great deal of what the petition established; however, the affidavit did go on and establish that the charges were being assessed and that a controversy existed as to the propriety of the charges.

Subsequently, an informal complaint hearing was had before Commissioner Stein, Commissioner Clancy, and Mr. Witherspoon. As a result of the hearing appellants were instructed to file a formal complaint to raise the issue of the reasonableness of such charges. While appellants were in the process of preparing such a complaint the Combined Act of 1963 was declared unconstitutional and thus appellee filed its petition for recertification.

Appellants then redrafted their complaint in the form of a petition to intervene, challenging the reasonableness of the $300 hook-on charge.

Affiants also testified that Commissioner Stein had been informed that if the Commission would grant the emergency relief requiring appellee utility to post a bond, appellants would then pay the premium for such a bond.

The Public Service Commission is given authority to grant emergency relief by statute:

"54-712 [12795]. Suspension of rates.—The commission shall have power, when deemed by it necessary to prevent

injury to the business or interests of the people, or any public utility of this state, in case of any emergency, to be judged of by the commission, to temporarily alter, amend, or with the consent of the public utility concerned, suspend any existing rates, services, practices, schedules and order relating to or affecting any public utility or part of any public utility in this state. Such alterations, amendments, or suspensions of such rates, service, schedules or practices so made by the commission shall apply to one [1] or more of the public utilities in this state or to any portion thereof, as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

Burns' Ind. Stat. Anno. § 54-712.

The issue presented is not if such relief could be granted, but whether the withholding of such relief was an abuse of discretion.

The appellee, Clay Utilities, Inc., was collecting a hook-on charge of $150 per line and the appellants had expended $139,028.62 to place the water and sewer lines in the ground and had stubbed each lateral to the property line. No cost or expense was incurred by the appellee utility at the time of the hook-up except that which was covered by the $6.00 per line inspection fee. The cost of the collector sewer leading from appellants' lines to the Mishawaka sewage disposal plant was paid totally by the City of Mishawaka.

Applying the reasoning and ruling set out in *American Vitrified Products Co.* v. *Public Service Comm.*, *supra*, this court is constrained to hold the order entered by the Commission was, in fact, a final, appealable order. Therefore, the appellee's motion to dismiss should be, and is hereby, overruled.

## UPON THE MERITS

The court, having overruled appellee, Clay Utilities, Inc.'s, motion to dismiss, we shall next consider this case on its merits. For the sake of brevity we shall not again relate

the facts and issues, but refer to them as set out in our opinion on the motion to dismiss.

The assignment of errors, in essence, is that the trial examiner and the full Commission acted contrary to law and acted capriciously and arbitrarily in denying appellants' request for emergency relief.

The assignment of error that the order is contrary to law "in a Public Service Commission case is sufficient to present both the sufficiency of facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the findings of fact upon which it was rendered." *American Vitrified Products Co.* v. *Public Service Comm., supra;* Burns' Ind. Stat. § 54-443, *supra.*

Appellants have combined the five specifications in the assignment of errors and supported them with one argument and we shall treat them together.

The affidavit of George Cressy and Edward Everett, presented to the Commission in evidence pursuant to its Rule XB111 (d), reiterated much of what has heretofore been stated in the petition to intervene. The affidavit was further supported by exhibits showing that the charges were being assessed, and that a controversy existed as to the propriety of the charges. The affidavit recites that the charges were discussed with Commissioner Clancy, Mr. Witherspoon and other Public Service Commission personnel; that thereafter, an informal complaint hearing was had, pursuant to Public Service Commission Rule III, with appellee-utility before Commissioner Stein, Commissioner Clancy and Mr. Witherspoon; and that as a result of that hearing appellants were instructed to file a formal complaint to raise the issue of the reasonableness of such charges. While appellants were preparing such a complaint the Combined Act of 1963 was declared unconstitutional. *Ft. Wayne* v. *Maplewood Park Utilities* (1968), 143 Ind. App. 507, 241 N. E. 2d 805. Thereafter, appellee utility filed its petition for recertification.

Appellants redrafted their complaint in the form of a petition to intervene, challenging the reasonableness of the $300 hook-on charge. In addition to the question of emergency relief, affiants also testified Commissioner Stein had been informed that if the Commission had granted the request for emergency relief requiring appellee to post a bond, *appellants would pay the premium for such bond.*

"The Commission has the power, when deemed by it necessary to prevent injury to business interests of the people or any public utility of this state, in case of any emergency, to be judged of by the commission, to temporarily alter, amend, or with the consent of the public utility concerned, suspend any existing rates . . ." Burns' Ind. Stat. § 54-712, *supra.*

Appellee contends in its brief that the affidavit of Cressy and Everett contains mere conclusions based upon inadequate facts, among which is the statement "that such charges were unreasonable and excessive in view of the insubstantial investment made by the utility."

Appellee further contends that appellants are basing their right to what appellants term "emergency relief" upon the provisions of Burns' Ind. Stat. § 54-712 and calls the court's attention to the case of *State ex rel. Indianapolis Traction and Terminal Co.* v. *Lewis* (1918), 187 Ind. 564, 572, 573, 120 N. E. 129.

Appellee further contends that the only evidence as to when the emergency first occurred is contained in the affidavit of George Cressy and Edward Everett, officers of the Twin City Realty Corporation and as partners in the real estate business. We cannot agree with this contention that there is no emergency for, in fact, from the evidence there is. The money to be paid for hook-on is not recoverable in the event the Commission orders a rate reduction after further hearing and we are of the opinion that such creates an emergency.

The Commission recognized that there was an emergency when the trial examiner allowed counsel for the appellants

to withdraw their ruling on the petition for emergency relief so that additional evidence to support the emergency relief could be put in evidence. At that time the trial examiner permitted appellant, Twin City Realty Corporation, to intervene, and the petition to intervene was admitted into evidence.

Following this the trial examiner overruled appellants' request for emergency relief. This was followed by an immediate appeal to the full Commission. The full Commission soon thereafter, by unanimous vote, sustained the trial examiner's ruling denying emergency relief.

It is our opinion that the Commission had the authority to grant the emergency relief requested.

Having determined that the Commission had the authority to grant the relief requested, we must next pass on the question of whether the Commission abused its authority and acted arbitrarily and capriciously in denying that relief.

Appellee offered no evidence to rebut the evidence of the appellants. The record is silent on the amount of money appellee had invested in its water and sewage lines. The record discloses that appellants had expended $139,028.62 to place the water and sewer lines in the ground and had stubbed each lateral to the property line. There was no cost to be incurred by appellee at the hook-up except as was covered by the $6.00 per line inspection fee. The cost of the collector sewer leading from appellants' lines to the Mishawaka Sewage Disposal plant was totally paid by the City of Mishawaka.

Our General Assembly has enacted statutes requiring that rates and charges permitted to be charged by a utility have to be reasonable and just. Burns' Ind. Stat. §§ 54-423 and 54-424, hereinafter set out, place the burden upon the Public Service Commission to adjust rates which upon investigation are found to be unjust, unreasonable or discriminatory. These sections provide:

"54-423 [12743]. Unjust rates—Orders.—Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules or joint rate or rates, to be unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this act, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this act."

"54-424 [12744]. Inadequate service—Orders.—Whenever, upon investigation made under the provisions of this act, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of any of the provisions of this act; or shall find that any service is inadequate or that any service which can be reasonably demanded can not be obtained, the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this act, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable."

There is nothing contained in the briefs of either of the parties to deny the allegations of appellants.

The Commission had authority to exercise its discretion to utilize its emergency power as appellants requested. Burns' Ind. Stat. § 54-712, *supra.*

Appellee contends the Public Service Commission had no jurisdiction over the subject matter of the action and even if it did, no reversible error is shown. We have determined, in our opinion on the motion to dismiss, that it did have such jurisdiction.

Appellee further contends that appellants have purposely avoided pointing out when the "emergency" first occurred and

states that the rates set by the Commission as to some 200 or more homes was paid, that an additional 77 lots were presently being developed, and this is the "sudden emergency". We are of the opinion that the paying out of about $28,000 for hook-ons for the 77 new properties soon to be connected to appellee's water and sewage line, with no opportunity to recover any of that amount in the event the Commission later reduced the rates, constitutes an emergency as to entitle appellants to relief under Burns' § 54-712, *supra*.

The law is for the protection of all of the people. It should not be construed on a strictly technical basis to help one person and on the other hand to injure or damage others.

Appellants made their request for emergency relief in the alternative and requested that in lieu of reducing the charge of $150 for water and $150 for sewer connections per residence that appellee continue to collect the same, but post a bond, *the premium for which appellants would pay,* to guarantee a refund of such charges after a full and final hearing by the Commission.

The Supreme Court and this court has authority, on the review of an order or a ruling of the Public Service Commission to affirm, reverse or remand to the Commission for further proceedings. Burns' § 54-449, *supra*.

This court said, in the case of *Guraly* v. *Tenta, et al.* (1955), 136 Ind. App. 527, 531, 132 N. E. 2d 725:

> "The equitable remedy of specific performance is not available as a matter of right, *Marion Trucking Co., Inc.* v. *Harwood Trucking, Inc., et al.* (1954), 125 Ind. App. 1, 116 N. E. 2d 636, 640, but rests in the sound judicial discretion of the court; *Ash and Others* v. *Daggy* (1855), 6 Ind. 259, 261; *Marion Trucking Co., Inc.* v. *Harwood Trucking, Inc., et al., supra*. Such judicial discretion is not an arbitrary one but is governed by and must conform to the well settled rules of equity. *Ames* v. *Ames* (1910), 46 Ind. App. 597, 610, 91 N. E. 509, 514; *Ash and Others* v. *Daggy, supra*. An abuse of discretion, reviewable on appeal, is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts before the court or against

reasonable, probable and actual deductions to be drawn therefrom. *Bailin* v. *Bailin* (1944), 223 Ind. 7, 57 N. E. 2d 436."

There being no dispute over the facts in the case before us, such uncontroverted evidence must be accepted as true. *Abel* v. *Love*, (1923) 81 Ind. App. 328, 143 N. E. 515. Where no evidence is adduced to the contrary, very slight evidence is sufficient to sustain a fact. *Ferger* v. *International Flour Mills* (1928), 80 Ind. App. 248, 140 N. E. 450.

We are of the opinion that reasonable men would conclude that the rate charge was not just and reasonable and appellee's continuation of a collection of $300 for a hook-on of water and sewage lines, plus $6.00 inspection fee for each line, is inequitable and an abuse of discretion.

The order of the Commission of May 8, 1969, in this cause is therefore held to be arbitrary, capricious and is contrary to law.

This cause is remanded to the Public Service Commission with instructions to enter an emergency order, pending final disposition of the cause, amending appellants', and those similarly situated's, schedule of rates and charges as applied to appellants', and those similarly situated's, connection charges to $2.50 per service connection, or in the alternative, allowing appellee to continue to collect connection charges at its present rates and to require appellee to give good and sufficient surety bond to the satisfaction of the Commission, conditioned upon appellee's refunding to the appellants and all others similarly situated such part or all of the connection charges received by it after the date of an emergency order which are in excess of those rates the Commission ultimately finds to be reasonable.

The Commission is further ordered to determine appellants' and all those similarly situated, rates in an amount found by the Commission to be commensurate with appellee's cost related to the extension of its services, and for further proceedings not inconsistent herewith.

Costs versus appellee, Clay Utilities, Inc.

Carson and Cooper, JJ., concur; Sullivan, J., dissents with opinion.

### DISSENTING OPINION

SULLIVAN, J.—I respectfully dissent from the majority opinion herein. Initially, I cannot agree, as stated by the majority in its consideration *"UPON THE MERITS"*, that the five specifications of appellants' assignment of errors are supportable by one argument nor in my opinion can they be treated together. Although appellants have not complied with old Rule 2-17(h) of the Indiana Supreme Court or with new Rule AP. 8.3(A)(7) in that they do not specifically set forth each error relied upon, for clarity I would set forth those specifications of the assignment of errors as follows:

"1. The decision, ruling and/or order of the Public Service Commission denying appellants' request for emergency relief by suspending certain hook-on charges, or in the alternative to require Clay Utilities, Inc., to post a bond for security to guarantee the return of such charges pending final determination of the reasonableness of such charges is contrary to law.

"2. The decision, ruling and/or order of the Trial Examiner denying appellants' request for emergency relief by suspending certain hook-on charges, or in the alternative to require Clay Utilities, Inc., to post a bond for security to guarantee the return of such charges pending final determination of the reasonableness of such charges is contrary to law.

"3. The decision, ruling and/or order of the Public Service Commission in affirming upon appeal the Trial Examiner's decision denying appellants' request for emergency relief by suspending certain hook-on charges, or in the alternative to require Clay Utilities, Inc., to post a bond for security to guarantee the return of such charges pending final determination of the reasonableness of such charges is contrary to law.

"4. The decision, ruling and/or order of the Trial Examiner was arbitrary and capricious in view of the fact that there was no evidence introduced in opposition to appellants' request for emergency relief.

"5. The order by the Full Commission on appealing a Trial Examiner's ruling denying appellants' request for emergency relief was arbitrary and capricious in view of the fact that there was no evidence introduced in opposition to appellants' request for emergency relief."

In my view, Specifications 4 and 5 of the Assignment of Errors present nothing for the consideration of this court since they limit the error claimed to the fact that appellees brought forward no evidence in opposition to appellants' request for emergency relief. It seems to me quite clear that the burden is upon appellants to show the Commission that there was, in fact, an emergency. In a related situation our Supreme Court in *State, ex rel. Indianapolis Traction & Terminal Co.* v. *Lewis* (1918), 187 Ind. 564, 120 N. E. 129 so held. The fact, therefore, that the utility did not oppose by evidence the claim of emergency here made, does not mean that appellants affirmatively carried their burden, as a matter of law, so as to render the Commission's decision arbitrary and capricious.

Assignments 1 through 3, however, of the Assignment of Errors concern quite a different question. It is essential that we recognize that these three assignments claim error only insofar as the Commission did not *suspend* the hook-on charges, or in the alternative, require a posting of bond to guarantee refund of such charges as might be determined unreasonable. The issue of *suspension* of the charges is raised for the first time by appellants' Assignment of Errors. The petition by appellant Twin City Realty Corp., which was before the Commission requested as an alternative to the posting of the bond, the "entry of an emergency order * * * *amending* the applicant's schedule of rates and charges * * * by *reducing* the *applicant's* connection charges to $2.50 per service connection * * *". (Emphasis supplied)

In my view there is and could be no error as claimed by Twin City Realty Corp. by reason of the Commission's failure to suspend the rates because, (1) that request for relief

was not made before the Commission; and, (2) even if such relief had been requested there was no showing that such suspension of charges had been consented to by the utility as required by Acts 1913, ch. 76, § 122, as amended and as found in Ind. Ann. Stat. § 54-712 (Burns' 1951 Repl.), which is quoted in its entirety by the majority opinion. The controlling portion of that statute in this regard, very clearly states that the Commission may, if it judges an emergency to exist, temporarily alter or amend rates "or with the consent of the public utility concerned, suspend any existing rates * * *".

For the reasons hereinabove mentioned, it does not seem proper for this Court, even in the alternative, to unilaterally grant that relief requested by Twin City Realty Corp. in its intervention petition, i.e., to reduce the service connection charge to $2.50 per connection. While such relief does conform to the relief prayed for in the petition, it is wholly outside the scope of our appellate review.

Since the majority in this opinion does not concern itself with the procedural matters hereinabove treated, I will address myself to the merits and would respectfully dissent from the majority decision insofar as the alternative order of remand directs the Commission to establish rates, even though temporarily, at a fixed amount. At the outset, I feel compelled to venture the view that the order in this respect, usurps the function of the Public Service Commission. The majority's determination is admittedly premised upon the following conclusion:

"* * * [T]hat the rate charge was not just and reasonable and appellee's continuation of the collection of $300 for a hook-on of water and sewage lines, plus $6.00 inspection fee for each line, is inequitable and an abuse of discretion.

"The order of the Commission of May 8, 1969, in this cause is therefore held to be arbitrary, capricious and is contrary to law."

It is not enough that as the majority speculates, reasonable men, upon a hearing not yet held devoted to that issue, may

determine that the utility rates are unreasonable. Whether the rates and charges here are factually unjust or unreasonable or discriminatory is not before us. That question will be determined by the Commission at the hearing which will be held for that very purpose pursuant to the statutory provisions quoted herein by the majority. Acts 1913, ch. 76, §§ 72 and 73, as found in Ind. Ann. Stat. §§ 54-423 and 54-424 (Burns' 1951 Repl.). These sections confer the power of determination solely upon the Public Service Commission. To be sure, that determination is judicially reviewable but not until the Commission has first had an opportunity to make its investigation and determination. The majority today usurps that function and places the burden of fixing utility rates upon this court.

Further, the majority decision erroneously directs the Commission, alternatively, in its future consideration of the final rates to be established, to fix such rates "conmensurate with appellee's *cost* related to the extension of its services". (Emphasis supplied) Such restrictive requirement totally ignores and precludes any excess of income over cost. It should be very apparent to all that such income is vitally necessary to every business or industry, not excluding utilities, for modernization, research, service expansion, etc.

By virtue of the majority's decision herein we indicate a willingness now and in the future to fix utility rates. We are neither technically qualified to assess the myriad factors and considerations required for the establishment of utility rates nor do we have the time to do so. As stated in *In re Northwestern Indiana Telephone Co.* (1930), 201 Ind. 667, 674, 171 N. E. 65:

> "The courts, in reviewing the work of the Commission, must keep in mind that they only have to do with questions calling for judicial interpretation as distinguished from matters administrative. So long as the Commission keeps within the field of regulative powers over the persons or entities over which it has jurisdiction, its orders and actions with reference to such matters must be respected by the

courts. The presumption of good faith and valid orders by the Commission must obtain until the contrary is made clearly to appear. * * * The theory of the law creating the Commission is that it shall be conscientiously and impartially administered by a body composed of a personnel especially qualified by knowledge, training and experience pertaining to the subject-matter committed to it * * *". See also *Public Service Commission* v. *Indiana Bell Telephone Co.* (1955), 235 Ind. 1 at 19, 130 N. E. 2d 467.

Further, a proper rate which is reasonable and just cannot be determined solely by cost as it relates to the service extended to a particular consumer or consumers. The traditional, and in my view the proper standard for determining a reasonable utility rate is that which permits the production of a fair return upon the fair value of the utility's property. *Public Service Commission* v. *Indiana Bell Telephone Co., supra,* at page 15.

My colleagues correctly state that the parties are not in dispute concerning the facts in this cause. The waters are muddied, however, by a statement that very slight evidence is required to sustain a fact when no evidence is adduced to the contrary. While such statement is undeniably true as to the sustaining of a *fact,* the true question before us is whether the uncontroverted facts sustain a *conclusion* that an emergency exists as a matter of law. Quite to the point is *State, ex rel. Indianapolis Traction & Terminal Co.* v. *Lewis, supra,* wherein the court said:

"* * * The burden was on the relator to present a case of emergency to be judged of by the commission, and if deemed by it necessary to prevent injury to the business or interests of the people or any public utility of this state, it might temporarily alter any existing rates, or, with the consent of the public utility concerned, suspend any rate then in force. * * * Under this section the commission may judge of the full scope and requirements of the emergency, its probable effects and duration, and to make such order as the exigencies of the case demand." 187 Ind. 564, 572.

See also *New York Central & St. Louis R.R.* v. *Singleton* (1934), 207 Ind. 449 at 458, 190 N. E. 761.

In its sole discretion the Public Service Commission has here determined that the emergency relief requestd should not have been granted. We are not permitted to interfere with that discretionary determination unless it be shown to be arbitrary and capricious as a matter of law. *Boone Co. REMC* v. *Public Service Commission* (1959), 239 Ind. 525 at 532, 159 N. E. 2d 121.

The majority has alternatively ordered a reduction in utility charges as prayed for in appellant Twin City Realty's petition to intervene. The court has thereby undertaken a complex duty and responsibility. The proper exercise of such duty and responsibility requires a consideration of all facts, circumstances and factors which bear upon what is or is not a fair and reasonable utility charge. Those facts, circumstances and factors are quite clearly not now available to us. Such assumption of authority by this court is, therefore, unnecessary, unwarranted and in my opinion ill-advised. If this decision is to be deemed a precedent for future review we will be called upon to fix rates and tariffs in every conceivable situation. We have neither the staff, the facilities nor the expertise to do so. We have only the authority to review rates *as fixed by the Public Service Commission* in the light of existing law.

The remand order permits an alternative course to be followed by the Public Service Commission in that it allows that agency to require appellee Clay Utilities, Inc., to post sufficient surety bond conditioned upon the utility's refund to all consumers of any or all of the hook-on charges subsequently determined to be unreasonable and excessive. It was agreed by all parties to the litigation during oral argument before this court that there is no legally recognized method or procedure whereby appellant Twin City Realty Corp. could recover, retroactively, hook-on charges paid, even though the Public Service Commission may hereafter determine those charges or a portion thereof to be unreasonable and excessive. We have no reason to question this state of the law. If, there-

fore, the utility here cannot, pursuant to any statutory or common law requirement, be ordered to refund an interim over-charge, i.e., if the utility has no liability in this respect, I wholly fail to see any authority on our part to order or sanction a surety bond to protect against that non-existent liability.

I would confine our authority and scope of review as hereinabove set forth and would, therefore, affirm the determination of the Commission.

NOTE.—Reported in 257 N. E. 2d 686.