## WESTERN UNION TELEGRAPH COMPANY *v.* ADAMS, ADMINISTRATRIX.

[No. 3,555.   Filed February 26, 1902.]

TELEGRAPH COMPANIES.—*Delay in Delivering Message.*—*Mental Anguish.*—Damages cannot be recovered for mental anguish alone in an action against a telegraph company for delay in delivering a message. *pp. 422, 423.*

APPEAL AND ERROR.—*Death of Plaintiff.*—A party against whom a judgment is rendered may appeal therefrom after the death of the judgment plaintiff. *pp. 423–427.*

SAME.—*Death of Judgment Plaintiff.*—Where a judgment plaintiff dies after judgment and before a transcript is filed the appellant must substitute in the assignment of errors the name of the per-

sonal representatives of the deceased judgment plaintiff and serve notice of the appeal upon the substituted parties.  *pp. 427, 428.*

From Monroe Circuit Court;  *W. H. Martin,* Judge.

Action by Ancil Adams against the Western Union Telegraph Company for damages resulting from delay in delivering a telegraph message.  Plaintiff died after the rendition of a judgment in his favor and the defendant appealed, Mary E. Adams, plaintiff's administratrix being substituted as appellee.  *Reversed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores, R. F. Davidson, G. H. Fearons, J. H. Louden,* and *T. J. Louden,* for appellant.

*J. E. Henley* and *J. B. Wilson,* for appellee.

COMSTOCK, C. J.—This action was brought in the Monroe Circuit Court to recover damages charged to have been sustained by the appellee's decedent by reason of the appellant's delay of twenty-four hours in delivering a telegraphic message to him.  The cause was tried by a jury, and a judgment was rendered upon the verdict against the appellant for $700.  From this judgment this appeal was taken.  The first error assigned is that the complaint does not state facts sufficient to constitute a cause of action.

The substance of the complaint is:  That the defendant was conducting a general telegraph business between Wheeling, Missouri, and Bloomington, Indiana; that on January 7, 1898, one Thomas Adams, deposited with the defendant's agent at Wheeling, for transmission to Ancil Adams, the plaintiff, the following message:  "Wheeling Mo., Jan. 7, 1898.  Ancil Adams, Bloomington, Ind.  Riley very low. Come at once.  Deliver.  Special messenger guaranteed. Thos. Adams".  Two dollars and fifty cents was deposited as a guaranty of the cost of transmission and delivery; the telegram was not transmitted with impartiality and in good faith, and without delay, and in the order of time in which it was received, but was delayed twenty-four hours at Bloomington, Indiana; Riley was the father of Thomas Adams,

and the only brother of the plaintiff; there existed between the plaintiff and his brother the strongest relations of friendship, confidence and love; the plaintiff took the first train after receiving said message to go to his brother's bedside, and got as far as Meadville, Mo., a few miles from Wheeling, on the morning of January 10th; the brother had died the day before, and had already been buried. Had the message been delivered promptly the plaintiff would have been able to reach the home of said brother in Missouri in time to have seen the body and attend the funeral; that, by reason of the failure of the defendants to transmit and deliver said dispatch as aforesaid, plaintiff was denied the privilege of seeing the body of his dead brother and attending said funeral and assisting the family of his brother in and about said funeral, and "thereby", the complaint proceeds, "the plaintiff was greatly distressed, became sick, nervous and exhausted", and "on account of said failure he suffered great mental distress and nervous exhaustion on account of the belief entertained by his deceased brother that he, plaintiff, paid no attention to the summons contained in said telegram". The only damages claimed in this complaint were those suffered by the plaintiff on account of missing his brother's funeral.

The usual rule for the ascertainment of damages to plaintiff in an action for delay in transmitting his telegraphic dispatch is stated to be such as naturally arise from a breach of the contract, and such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as to the probable result of the breach of it. *Western Union Tel. Co.* v. *Henley*, 23 Ind. App. 14; *Western Union Tel. Co.* v. *Bryant*, 17 Ind. App. 70.

The courts which hold that damages for mental suffering alone may be recovered base the recovery upon the fact that the language of the message gives such notice to the company that the message concerns such event or events as

that negligence on the part of the company is likely to be followed by mental distress. The complaint before us does not allege any knowledge by the defendant of the relationship between the sender of the telegram and the appellee; nor does the telegram disclose any relationship, nor does it indicate an immediate funeral, nor advise appellant that failure to deliver it would be likely to cause mental or physical pain. Since this appeal was taken, the Supreme Court of this State, in *Western Union Tel. Co.* v. *Ferguson,* 157 Ind. 64, have held that where through delay in delivering a telegram plaintiff was deprived of the opportunity of attending the funeral of a near relative, and suffered neither pecuniary nor bodily injury, he could not recover for the mental anguish occasioned by the defendant's negligence. The conflicting holdings of various jurisdictions are set out and so many cases cited therein that we deem it only necessary to refer to the case just named. It is decisive of the appeal before us.

Counsel for appellee have moved to dismiss this appeal, and strike the case from the docket of the Appellate Court. The facts relied upon as grounds for dismissal are as follows: Judgment was obtained in favor of Ancil Adams in the Monroe Circuit Court, November, 1899; Adams in whose favor the judgment was rendered died in February, 1900; the transcript was filed in this court in September, 1900; so that it appears that Adams, in whose favor the judgment was rendered, died three months after its rendition, and the transcript on appeal was filed six months after his death.

Section 644, Burns 1901, provides that appeals may be taken from the circuit court and superior court to the Supreme Court by either party from all final judgments. By §645, Burns 1901, one against whom a judgment has been rendered may appeal from such judgment at any time within one year from its rendition. Section 648, *supra,* reads: "In case of the death of any or all the parties to a

judgment before an appeal is taken, an appeal may be taken by, and notice of an appeal served upon, the persons in whose favor and against whom the action might have revived, if death had occurred before judgment". Section 649, "The death of any or all of the parties shall not cause the proceedings to abate; but the names of the proper persons being substituted, upon consent or upon notice, the cause may proceed". It is reasonable to infer that the intention of the foregoing sections is to provide a method of appeal in cases where death of one of the parties to a controversy has interrupted the ordinary course of legal procedure. If possible, the various sections of the statute concerning appeals must be construed so as to give each of them effect. While the right of appeal is regulated by statute it ought not to be unreasonably restricted.

The general policy of the law would seem to make it the duty of the court to construe the sections of the statute set out as directory of the method to be pursued in the prosecution of appeals, rather than a limitation or abridgement of the substantial right to appeal at all in such cases. In the case of *Stout* v. *Indianapolis, etc:, R. Co.*, 41 Ind. 149, the original plaintiff, Peter Stout, recovered a verdict and judgment in the Marion Superior Court. On appeal to general term the judgment was reversed, and the cause was remanded to special term for a new trial. Stout appealed from the judgment of general term to the Supreme Court, and died, the appeal being prosecuted by his administrator. It was held that the judgment of reversal left the party without a judgment, and simply with an action pending; and that as the cause of action did not survive, the power to prosecute the appeal, together with the cause of action itself, died with the plaintiff. The Stout case was distinguished by the Supreme Court from *Hilker* v. *Kelly*, 130 Ind. 356, 15 L. R. A. 622. On the first day of May, 1888, the appellee Kelly recovered a verdict in the Marion Superior Court against Henry Hilker, in an action for per-

sonal injuries which she alleged she had sustained by reason of his actionable negligence. Three days later Hilker filed a written motion for a new trial. On the 11th day of May, 1888, while this motion was pending, and before it had been argued or submitted, Hilker died. June 12th, following, the appellee moved the court for a judgment in her favor on the verdict, *nunc pro tunc*, as of the date of May 5, 1888. The court sustained this motion, and rendered judgment as of that date, and the administratrix appealed. In the Supreme Court the decision was not only upon the alleged error of the court in entering the judgment after the defendant's death, but also upon the merits of the controversy between the parties. There was no question of the administrator's right to appeal, although if Hilker had died before the verdict was rendered the action could not have been revived against his administrator. If a judgment can be rendered upon a verdict after the death of the party against whom the verdict is rendered, we can see no just reason why the party against whom a judgment is rendered may not be permitted to appeal therefrom after the death of the other party.

In *Diefendorf* v. *House*, 9 How. Pr. (N. Y.) 243, the court said that the practice of entering a judgment, *nunc pro tunc*, as of a term prior to the death of the party, such case depends upon the rule of common law, "that when parties are hung up by act of law, neither of them loses his right, but eventually judgment is entered up, *nunc pro tunc*, as if the party were still alive.

In *Shafer* v. *Shafer*, 30 Mich. 163, the appeal was from a judgment granting a divorce to the appellee. Within a short time after the decree the party securing the divorce died. After his death, but within the period allowed by statute for appeals in chancery, the defendant took an appeal to the supreme court, notices being served on the solicitor of record for the complainant in the court below, and on the administrator of the deceased complainant's estate.

A motion was filed to dismiss the appeal on the ground that it was unauthorized, but this motion was denied, the court holding that the statute regulating chancery appeals was broad enough to authorize such an appeal in a cause thus circumstanced.

An act concerning the survival of claims for personal injuries, Acts of 1897, p. 227, reads as follows: "That whoever has a claim for personal injuries and obtains judgment for the same against any person, company or corporation in any trial court of this State, and from which judgment any person, company or corporation, against whom or which the same was obtained, shall appeal to the Supreme or Appellate Court of the State, and such judgment be reversed by such Supreme or Appellate Court, and a new trial be granted to appellant thereon; and if the person who obtained such judgment should die, pending such appeal, or before a new trial after such reversal can be had, such claim for personal injuries shall survive and may be prosecuted by the personal representatives of such decedent, as other claims are prosecuted for and on behalf of decedents' estates".

It is evident that by "pending appeal" is meant from the time of the announcement by the defeated party of his intention to appeal. Otherwise if the plaintiff dies after the judgment, and before the transcript is filed, his cause of action dies with him, notwithstanding this section of the statute which obviously intended to provide against such contingency. If such is not the proper construction of the act it must be held to discriminate in favor of certain persons who may die at one time, as against those who may die at another time. Such an intention can not be attributed to the legislature. Therefore, since that body has made provisions for the survival of the cause of action after reversal in such cases, in doing so it has given expression to the legislative construction of §§648, 649 Burns 1901. By use of the words "appeal" and "reversal" we may conclude

that the legislature construed the right of appeal in such causes as the present as existing under these sections, since there can be no appeal or reversal, and, consequently, the words would be meaningless unless the right of appeal exists. This construction is fair and just and works no hardship to either party.

The cases cited by counsel for appellee are distinguishable from the case at bar. In *Moore* v. *Slack*, 140 Ind. 38, the appeal was taken in the name of a deceased person who died after judgment, and before appeal, instead of in the name of the personal representative of the decedent. 'The court dismissed the appeal on the ground that an appeal in the name of a deceased person is a nullity as the court could acquire no jurisdiction over the appellant in such a case. The Moore case was decided upon the authority of *Taylor* v. *Elliott*, 53 Ind. 441, and *Branham* v. *Johnson*, 62 Ind. 259, which are of like tenor and effect. In the later case of *Doble* v. *Brown,* 20 Ind. App. 12, the appeal was dismissed because the appellant attempted to prosecute his appeal against a dead appellee, who had died after judgment and before the appeal. There was no substitution before appeal of the proper person, the executor, and no notice was served upon him. It was not the purpose by these decisions to deny the right of appeal given by the general provisions of the statute for a reason for which an appellant was in no wise responsible.

The conclusion from each of these cases is that to constitute a valid appeal, where death occurs after judgment and before the transcript is filed, it is necessary for the appellant to substitute in the assignment of errors the name of the personal representatives of the deceased judgment holder, and to have notice of the appeal served upon the substituted party. This practice was followed in the present appeal. The name of "Mary E. Adams, administratrix of the estate of Ancil Adams, deceased", appears as appellee in the assignment of errors, and the fact is noted of his

death and her appointment as administratrix by the Monroe Circuit Court. Notice was issued upon the assignment of errors against Mary E. Adams, administratrix of the estate of Ancil Adams, deceased, the appellee named in the assignment. The notice was issued September 6th, less than one year from the date of the judgment. The administratrix was the proper person to be substituted in this appeal and to be served with notice. The appeal was properly taken.

The judgment is reversed, with instructions to sustain appellant's demurrer to the complaint.