LEMMON, Judge.
This is a suit for damage to a paved driveway situated on a servitude of passage across certain parcels of immovable property owned by the three plaintiffs and one other person. The trial court awarded plaintiffs $4,468.00 for the cost of replacing of the entire driveway and $600.00 for mental anguish. On their appeal, as they did in the trial court, defendants concede that they caused some damage to the driveway, but question on several bases the amount awarded by the trial court, as well as the propriety of an award for mental anguish. By answer to the appeal, plaintiffs seek an increase in the latter award.
Although there were some points of dispute, we find that the operative facts were as follows:
In 1967 defendants undertook to raise the levee along the London Avenue Canal in the City of New Orleans. At that time plaintiffs owned homes on lots adjacent to the levee, which (except for the lot at the corner of Treasure Street) did not border on a dedicated street. The servitude, located parallel and adjacent to the levee, served as a means of ingress and egress to Treasure Street for the land-locked plaintiffs.
Beginning at Treasure Street, the servitude extended along the 112-foot side line of the corner lot and then continued across the four interior lots which faced the canal for a total length of about 256 feet.
The concrete driveway was in existence prior to the 1955 notarial act which established the eight-foot servitude. Much of the original driveway was ten feet wide. The portion which crossed the corner lot, originally only eight feet wide, was subsequently widened to ten feet. Additionally, a concrete parking apron, varying in width, had been constructed adjacent to the four interior lots, apparently at the same time as the original driveway. The entire driveway and the aprons were composed of non-reinforced concrete, approximately four inches thick.
Since the first of the present owners purchased his property in 1956, no heavy traffic had ever used the driveway. Although the concrete had sustained some cracking, it was satisfactorily serviceable (prior to the present damage) for use as a private driveway for four residences, except for the 2' x 112' addition, which was of an inferior grade of concrete and admittedly needed to be replaced.
Prior to commencing work, a Levee Board engineer contacted one of the plaintiffs to request permission for the contractor to use the servitude in connection with the project. The engineer explained that the fence and trees would be removed from the existing levee; then steel pilings would be driven; and finally the concrete wall would be poured on top of the steel pilings. This plaintiff consulted the other owners and thereafter communicated permission to the Levee Board for use of the servitude, conditioned upon the contractor paying for any damages resulting from the operations.
In April, 1967 the contractor used the servitude for two or three days while removing the fence and trees from the levee in that area and then moved on to other areas for clearing operations. In late August the contractor again used the servitude for one to two weeks while driving pilings and pouring the concrete wall.
During the clearing stage heavy equipment used for uprooting and grinding the trees caused some additional cracking of the driveway. Additionally, the mud, sand, leaves and other debris on the driveway were not removed after the clearing operations were completed. In the pile driving and concrete pouring stage, further damage occurred when flat-bed trucks delivered the steel piles, which were placed partially on the driveway and partially on the levee; then the pile driver and welding machine accomplished that phase of the *819 work; and finally, concrete delivery trucks completed the pouring operations.
After the work was completed, plaintiffs demanded that the entire driveway be replaced. Defendants refused, and this suit followed.
In this court defendants primarily contend that they caused little additional cracking to an already deteriorated driveway. Citing Menard v. Andrew Jackson Apartments, Inc., 225 So.2d 249 (La.App. 4th Cir. 1969), they argue they should not be required to pay for the replacement of the driveway, but only for the repair of the additional damage.
Defendants’ argument presupposes that the driveway, like the cracked walls in the Menard case, could be repaired. There was a conflict in the testimony as to whether the driveway could be repaired or needed to be completely replaced, and the trial judge (who viewed the scene during the course of the trial) resolved the question by awarding the cost of complete replacement. While the before and after photographs could support defendants’ contention as to the extent of additional cracking, a conclusive determination based solely on these exhibits is difficult because of the quality of the photographs and the debris appearing on those taken after the damage. After reviewing the entire record, we cannot say the trial judge erred in finding the additional cracking was so extensive as to require replacement of the entire driveway.
Alternatively, defendants argue that if the driveway must be replaced, the amount awarded for cost of replacement was excessive and, in any event, a credit for depreciation should be deducted from the replacement cost.
Plaintiffs’ estimator opined that replacing the driveway and aprons would cost approximately $9.00 per square yard, or $4,468.00. He admitted the driveway could be replaced without replacing the undamaged aprons, unless the existing concrete was reinforced. (The evidence indicated, more probably than not, the concrete was not reinforced.) He recommended, however, that the replacement concrete be reinforced and included this additional cost factor in his estimate.
Defendants’ estimator testified that replacement would cost $8.00 per square yard for reinforced concrete and $7.00 per square yard for non-reinforced.[1] His inspection report contemplated replacement of the driveway only, and he verified this could be done without replacing the aprons.
The evidence does not support an award for the cost of replacing all of the parking aprons or for using reinforced concrete in replacing the driveway. Only plaintiff Lagraize testified that the apron on his property was damaged. The photographs support Lagraize’s claim (see numbers 5 and 11) but do not evidence any damage to the aprons on the properties of the other plaintiffs. Furthermore, the 2' x 112' strip added to the original driveway was admittedly already in need of replacement. We therefore conclude that only the original driveway area and La-graize’s apron needed to be replaced because of destruction by defendants. We further conclude these areas could be replaced with non-reinforced concrete for $8.00 per square yard ($1.00 per yard less than plaintiffs’ estimator’s figures for reinforced concrete).
As to defendants’ claim for a deduction because of depreciation, we note that-the measure of damages, where property cannot be repaired, is the difference in value of the property before and after the occurrence. Granger v. Bouillion, 220 So.2d 764 (La.App. 1st Cir. 1969). Defendants’ tort caused a diminution in value *820 to each plaintiff’s entire property, consisting of the lot, improvements and all appurtenances. The after value of each property to a reasonable purchaser on the open market was obviously less because of loss of automobile accessibility, which could be rectified only by replacing the driveway. While the record contains no specific appraisals, we can reasonably observe that the cumulative diminution in value of all of the properties was as great as the cost of replacing the driveway.
Furthermore, depreciation is ordinarily pertinent in loss evaluations in which the before and after values cannot otherwise be determined; the evaluator in such a case determines the value of the destroyed property by ascertaining the current replacement cost and then reducing that cost by applying a factor (called depreciation) designed to adjust the .cost new to reflect the value inferiority of the old property. In the present case each property had access to the street by means of a driveway which, although not new, was satisfactorily serviceable for its intended use.[2] The overall value of the entire property with the old driveway would not have been appreciably enhanced by replacement with a new one. Stated otherwise, there was no substantial value inferiority between the property with the old driveway (which could reasonably be expected to serve the minimal traffic indefinitely) and the same property with a new driveway.
Accordingly, we conclude that depreciation is not an applicable consideration in the present case.
Defendants next contend that, since only three of the four property owners brought the action, recovery should be limited to three-fourths of the proved damages.[3] They cite Hayward v. Noel, 225 So.2d 638 (La.App. 1st Cir. 1969), in which one of three co-owners was allowed only one-third of the total damages in a trespass action.
The present suit by the three plaintiffs sought to recover, in the proportion of one-third each, the total replacement cost of the driveway and aprons.'
As to the damage to plaintiff Lagraize’s apron (which we have found was the only apron proved damaged), he alone is entitled to recover the cost of replacement, which we set at $298.40 (12' x 28', or 37.3 square yards at $8.00).
Destruction of the driveway caused separate damage and diminution in value to each plaintiff’s property, and tort law imposes an obligation on defendants to repair the damage to each. Nevertheless, the repair of each portion of the driveway would benefit all other properties further away from Treasure Street than the segment repaired. The issue thus presented is who can collect monetary damages due under defendants’ obligation to repair each segment.
The obligation imposed by tort law is an obligation owed jointly to all creditors and not an obligation owed to creditors in solido, since solidarity between creditors may be created only by contract or by testament.[4] Thus, each servitude owner must individually enforce that part of defendants’ obligation due to him; defendants cannot be made to pay twice for the same damage. We therefore restrict the recovery of each plaintiff to the re *821 placement cost of that portion of the driveway located on his property.
Plaintiffs’ demands were directed entirely against defendants. Whether or not one plaintiff could require another to expend this monetary award on repair of the driveway is an issue which is not before us at the present time.[5]
The awards for replacement of the section of the driveway on each plaintiff’s property are therefore set as follows :
Lagraize . — Lot T — $291.20 (41' x 8', or 36.4 sq. yds. at $8.00)
Lot J — $265.33 (i/3 of 112' x 8', or 99.5 sq. yds. at $8.00)
Meyer —Lot 7 — $284.00 (32' x 10', or 35.5 sq. yds. at $8.00)
Lot J — $265.33 (1/3 of 112' x 8', or 99.5 sq. yds. at $8.00)
Cocheron —Lot 8 — $284.00 (32' x 10', or 35.5 sq. yds. at $8.00)
Finally, defendants contend an award for mental anguish is not proper in this case.
Louisiana courts have allowed damages for mental anguish in cases involving specific tortious conduct, such as an invasion of privacy or of enjoyment of the home, or a violation of similar property rights, whether or not there was a pecuniary loss. McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21 (1944) ; Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). But damages for emotional stress have not been allowed (when unaccompanied by physical injury) in the case of the tort of simple negligence, unless the emotional disturbance causes illness or bodily harm. See Carimi v. Saia, 301 So.2d 895 (La.App. 4th Cir. 1974), explaining Cooper v. Christensen, 212 So.2d 154 (La. App. 4th Cir. 1968) and Holmes v. Le Cour Corp., 99 So.2d 467 (La.App. 4th Cir. 1958). See also Restatement, Second, Torts §§ 312, 313, 436A.
In the present case (involving ordinary negligence) there is no proof of any emotional distress sustained by plaintiffs which resulted in illness or bodily harm. Neither is there proof the tort caused any inconvenience or loss of use during the period in which the repairs or replacement could reasonably have been accomplished.[6] The award of $600.00 must be disallowed.
Accordingly, the judgment of the trial court is amended to reduce the awards to Wilson A. Lagraize, Sr. to $854.93, to Joseph G. Meyer to $549.33, and to Henry Cocheron to $284.00. As amended, the judgment is affirmed.
Amended and affirmed.

. While the estimator testified these figures pertained to concrete of six-inch thickness, his earlier -written report listed these sums as the cost necessary to replace a four-inch driveway.

. In appraisal parlance, the driveway had a low effective age and a high remaining useful economic life.

. At the time of the tort four different persons owned the four interior properties, which contained residences. Three of the four owned the vacant corner lot in indivisión.
At the time of trial two plaintiffs had sold their residences. The third plaintiff, whose residence was located at the end of the driveway, owned no interest in the corner lot.

.See 2 Plainol, Traité Élémentaire de Droit Civil, § 726 (11th ed. 1939, Da. State Daw Institute trans. 1959) ; IV Aubry & Rau, Cours de Droit Civil Franeais (6th ed. 1942, Da. State Daw Institute trans. 1965).

. The works and special constructions necessary for the use of a servitude may be done by the owner of the dominant estate, and the costs devolve upon him in the absence of an agreement to the contrary. C.C. arts. 772, 773. See also 1 Plainol, Traité Élé-mentaire de Droit Civil, § 2966 (12th ed. 1939, La. State Law Institute trans. 1959).

. There was some proof of inconvenience and inability to use the driveway caused not by the tort, but by the work on the project to which plaintiffs consented.