CHARLIE STUART OLDSMOBILE, INC. *v.* WILLIS R. SMITH AND GENERAL MOTORS CORPORATION.

[No. 2-1274A289. Filed November 22, 1976.]

*James W. Stilwell, Stilwell, Hackemeyer & Life,* of Indianapolis, for appellant.

*Donald M. Ream, Jr.,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J. — Defendant-Appellant Charlie Stuart Oldsmobile, Inc. (Charlie Stuart) appeals from a trial court judgment of Five Thousand ($5,000.00) Dollars plus costs in favor of Plaintiff-Appellee Willis R. Smith (Smith) upon his complaint for property damages, including mental anguish, due to the tortious acts of Charlie Stuart's service department in repairing Smith's Toronado, claiming the damages awarded for injury to the vehicle are unsupported by the evidence and damages awarded for mental anguish are contrary to law.

Affirmed in part and reversed in part.

## FACTS

The evidence and facts most favorable to the trial court's judgment are:

Smith purchased a 1970 Toronado automobile from Charlie Stuart Oldsmobile on February 12, 1970. The automobile

cost Six Thousand Three Hundred Forty-seven and 33/100 ($6,347.33) Dollars and was delivered on March 21, 1970.

On April 30, 1970, after the automobile had been driven nine hundred thirty-one (931) miles, the transmission failed and it had to be towed in to Charlie Stuart. It was repaired under the terms of an express warranty by General Motors Corporation covering defects in the vehicle's power train components occurring within five (5) years or fifty thousand (50,000) miles of use.

Smith requested Charlie Stuart to fix several other defects, including a noisy speedometer, none of which were repaired when the car was picked up sixteen (16) days later.

On June 4, 1970, Plaintiff returned to Charlie Stuart and pointed out these defects to a Service Manager who assured him the problems would be solved . . . but they were not when Smith picked up his automobile the next day.

Again he returned on June 8, 1970. This time the car remained with the agency for four (4) days. Afterwards, the speedometer was still noisy, and Smith discovered the car had been further damaged during the process of repair. The repairman had:

(1) broken the gear selector pointer,
(2) put two (2) holes in the rear seat upholstery,
(3) repaired a dent in the right rear fender and a scratch on the left door by applying the wrong color of paint to an area wider than necessary, and
(4) left the interior of the car in greasy, dirty condition.

Again Smith was to bring the car back to rectify these errors.

On June 15, 1970, he returned, but the defects complained of had not been corrected.

On June 17, 1970, Smith met with Charlie Stuart personally in an attempt to remedy the situation. Among other things, Smith complained his speedometer was broken, forcing him to estimate his speed by imitating the pace maintained by other

vehicles. He was told everything would be fixed with just one more visit.

·· On August 17, 1970, Smith repeated the familiar journey to Charlie Stuart. Eleven (11) days later, he retrieved his Toronado only to find the speedometer still made noise, white streaks on his vinyl top had not been removed as promised, nor had a series of paint scratches on the wheels been corrected. The rear seat arm rest, which was in good condition before the visit, was not collapsed.

Smith's troubles continued when later in the summer he drove his automobile to Florida for a vacation. The previously repaired transmission began leaking fluid, and the speedometer was still noisy.

On January 5, 1971, once again the Toronado was taken back to Charlie Stuart's Service Department for more repairs. The work was not performed properly. The repairmen not only failed to fix the speedometer and the transmission, but as on previous occasions, new defects appeared. The repairman smashed the dash ashtray sideways into an adjacent panel and bent the gear selector so it permanently pointed to the wrong gear.

On January 14, 1971, Smith visited the Charlie Stuart agency and met with the Service Manager and Mr. Stuart. They discussed the possibility of trading Plaintiff's Toronado for another model, but Plaintiff stated he wanted to keep his automobile. So he was again promised if he would bring it back again everything would be fixed.

Accordingly, the Toronado was brought back on March 3, 1971 . . . for the last time. Fifteen (15) days later when Smith arrived, he and a Service Manager test drove the automobile and discovered the speedometer was still not functioning, the seat belts were covered with grease and the car's flat cushion was filthy. After a more careful examination Smith also discovered:

(1) the rear deck panel which had been replaced did not fit,

(2) there was a gap between the seat and a collapsed arm rest which had been repaired,

(3) a bulb cover on the front dash was missing, causing a blinding light to shine in the driver's eyes during night-time driving,

(4) a stained blemish, streak was on the left front fender which could not be removed,

(5) the rear deck panel was painted a color which did not match the interior of the car.

For some unknown reason the car's air-conditioner was also broken.

On October 8, 1971, Smith filed a multiple paragraph Complaint alleging Defendants Charlie Stuart and General Motors Corporation with breach of certain warranties and tortious conduct in the repair of the Toronado. Only relevant to this appeal is Paragraph Three (3) of the Complaint addressed to Charlie Stuart:

. . . 2. That thereafter the plaintiff during the times his automobile was in the service department of the defendant Charlie Stuart Oldsmobile, Incorporated, has had said vehicle injured, damaged, broken and rendered defective in various parts and components, by said defendant as follows:

    a. Attempted repair of a dent by partially filling by brushing with paint of a different color than that used to coat surrounding surface

    b. Brush-painting door scratch with paint of a different color than that used to coat surrounding surface

    c. Gear selector pointer missing

    d. Two holes made in upholstery in right rear side panel

    e. Grease on back and front seats and floor mats

    f. Collapse of right rear arm rest caused by non secure of screws at time of repair to side panel

    g. Gear selector severely bent and discolored

    h. Ash tray opening at driver's seat damaged and closure panel pushed inward on one side

    i. Dents upon steering wheel

    j. Non fitting rear deck panel

k. Rear deck panel of color of other than surrounding material

l. Gap in right rear armrest

m. "Lights" indicator plate on dash missing

n. Stain streak on left front fender

o. Large panel plate on dash missing

p. Defective lights under dash.

all while purporting and pretending to repair and service said vehicle.

3. That such acts of the defendant, Charlie Stuart Oldsmobile, Incorporated, by their servants and employees in such injuring, damaging, breaking and rendering defective and damaged said parts and components of the plaintiff's automobile were done wantonly, recklessly, callously, indifferently and utterly and wholly without regard to the plaintiff's rights in his new automobile as his property.

4. That said acts of the defendant, Charlie Stuart Oldsmobile, Incorporated, have caused the plaintiff in terms of loss of value of and upon said Oldsmobile Toronado automobile and said plaintiff has been further damaged by reason of the wanton, reckless, callous and indifferent acts of said defendant toward his automobile during service and repair visits by reason of humiliation, embarrassment, chagrin, disappointment and frustration, all in the total sum of actual and *punitive damages* of $20,000.00.[1] (Emphasis added.)

A partial summary judgment against Smith on the issue of punitive damages alleged in Paragraph Three (3) was entered by the trial court, and Smith thereafter deleted the words "punitive damages" from the Complaint.

At the bench trial on May 24, 1974, Smith testified as to the wrongful acts of Charlie Stuart causing injury to his Toronado and stated he was damaged "$4,000.00" by reason of "just plain loss of value." There was no other evidence presented by either party as to the extent of damages sustained. The Court entered judgment for Smith on Paragraph Three (3) in the sum of Five Thousand ($5,000.00) Dollars. The

1. Damages for loss of use of the vehicle were not sought by Smith (Charlie Stuart furnished substitute transportation for most of the fifty-six (56) days the automobile was in the shop.)

Court found for Defendants Charlie Stuart and General Motors Corporation on the other paragraphs of the Complaint. Charlie Stuart appeals.

## ISSUES

Two issues are presented for disposition:

ISSUE ONE: Was there substantial evidence to support the trial court's judgment awarding Smith Five Thousand ($5,000.00) Dollars for damages to his Toronado automobile?

ISSUE TWO: Are damages for mental anguish suffered as a result of negligent injury to an automobile recoverable in Indiana?

As to *Issue One*, Charlie Stuart maintains that Smith failed to provide substantial evidence of probative value to support the judgment and that Smith's evidence his Toronado suffered a Four Thousand ($4,000.00) Dollar loss in value was speculative and mere conjecture.

As owner of the damaged automobile, Smith replies that his opinion as to loss of value has probative value and there was substantial evidence supporting his value opinion.

As to *Issue Two*, Charlie Stuart maintains damages for mental anguish, unaccompanied by physical injury, can only be awarded when the wrongful conduct is shocking, outrageous, and offensive, and the evidence shows the automobile was damaged through mere negligence unaccompanied by such conduct.

Smith argues, somewhat generally, that mental anguish is a proper element to be considered when awarding compensatory damages for an injury to property, and that physical injury is not a prerequisite to recovery for mental anguish, and such damages should not be denied because of difficulty in estimating them.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that there was only substantial evidence to support a judgment of Four Thousand ($4,000.00) Dollars, and therefore a judgment of Five Thousand ($5,000.00) Dollars was beyond the scope of the evidence.

There is no mystery surrounding our conclusion that a Five Thousand ($5,000.00) Dollar judgment under these circumstances is excessive, not because the judgment is so outrageous as to indicate passion or prejudice, but because the amount of damages was simply not within the scope of the evidence before the court. The rule is frequently cited that the amount of damages awarded must be within the scope of the evidence. *Wolff* v. *Slusher* (1974), 161 Ind. App. 182, 314 N.E.2d 758; *Northern Indiana Pub. Serv. Co.* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N.E.2d 784; *First Bank & Trust Co.* v. *Tellson* (1954), 124 Ind. App. 478, 118 N.E.2d 496. No evidence was introduced justifying a judgment in excess of Four Thousand ($4,000.00) Dollars.

The burden was on Smith to prove damages to his Toronado. The ordinary measure of damages for wrongful injury to personal property is the difference between its market value immediately before and after the injury.[2] *Louisville, N.A. & C. Ry.* v. *Peck* (1884), 99 Ind. 68; *Moorman Mfg. Co.* v. *Barker* (1942), 110 Ind. App. 648, 40 N.E.2d 348; *Maxwell Gravel Co.* v. *Fisher* (1926), 92 Ind. App. 39, 151 N.E. 618; *Lake Erie & W. R.R.* v. *Molloy* (1922), 78 Ind. App. 72, 134 N.E. 913; 22 AM. JUR. 2d *Damages* § 146 (1965). MCCORMICK, THE LAW OF DAMAGES § 124, at 470 (1935).

---

2. This case was tried and appealed as an action ex delicto on Smith's third paragraph of complaint for wrongful injuries to Smith's auto, and we shall treat it accordingly.

At trial Smith shouldered the burden by first introducing evidence from which the court below could reasonably conclude that the value of the car before the injury was Six Thousand Three Hundred Forty-seven and 33/100 ($6,347.33) Dollars, its purchase price.[3] His automobile was delivered on March 21, 1970, and first injured on June 8, 1970. Between these two dates, the car was at Charlie Stuart's undergoing repairs for a period of seventeen (17) days.

Plaintiff then proceeded to testify extensively as to each injury to his Toronado, bolstered with photographic evidence, and summed up the total loss of value as being Four Thousand ($4,000.00) Dollars.[4] This evidence is "substantiated" in that a reasonable mind could accept it as adequate to support a conclusion. *See McCague* v. *New York, C. & St. L. R.R.* (1947), 225 Ind. 83, 71 N.E.2d 569, *rehearing denied,* 225 Ind. 83, 73 N.E.2d 48; *Twin City Realty Corp.* v. *Clay Utilities, Inc.* (1970), 146 Ind. App. 629, 257 N.E.2d 686; *Burke* v. *Burke* (1963), 135 Ind. App. 235, 191 N.E.2d 530.

Also, an owner may testify as to loss of value attributable to the injury to this automobile:

---

3. ". . . evidence of its value within a reasonable time before or after such point is competent as bearing upon its value at the time in issue." *Tennessee Carolina Transp., Inc.* v. *Strick Corp.* (1973), 283 N.C. 423, 427, 196 S.E.2d 711, 720. *See Seaboard Coast Line R. R.* v. *Toole* (1973), 128 Ga. App. 24, 195 S.E.2d 282; *Nail* v. *Hiers* (1967), 116 Ga. App. 522, 157 S.E.2d 771; *Heath* v. *Mosley* (1974), 286 N.C. 197, 209 S.E.2d 740; *Krause* v. *Eugene Dodge, Inc.* (1973), 265 Ore. 486, 509 P.2d 1199; *cf. Hawkins* v. *Thompson* (1919), 69 Ind. App. 605, 122 N.E. 431.

4. This testimony was the only probative evidence as to the extent of damage to Smith's auto. In its brief, Charlie Stuart claims Smith's testimony concerning trade-in offers made by Dellen Oldsmobile and Charlie Stuart indicate the real value of Plaintiff's 1970 Toronado. An allowance for property included in a trade offer, as distinguished from an actual exchange, is indirect evidence too speculative to establish market value. *See: Alber* v. *Wise* (1960), 3 Storey 126, 166 A.2d 141; *Anderson* v. *American Bankers Ins. Co. of Florida* (1954), 99 Ohio App. 183, 132 N.E.2d 256; *Carnes* v. *Ditzenberger* (1933), 163 Okl. 146, 21 P.2d 756; *Hughes* v. *Scott* (Tev.Civ.App. 1932), 46 S.W.2d 1111. *Compare: Wulschner-Stewart Music Co.* v. *Faulkner* (1913), 55 Ind. App. 208, 103 N.E. 665. This is especially true here where Dellen Oldsmobile made its trade-in offer without knowing what was wrong with Plaintiff's automobile, and Charlie Stuart's offer was flatly refused by the Plaintiff as unfair. Under these circumstances we can not regard evidence of trade-in offers as probative.

One seeking recovery for injuries sustained as a result of an automobile accident may not state his opinion on the issue of his damages. A different rule applies, however, when the suit is for damages to his automobile.

In such cases, after detailing the extent to which his vehicle was damaged, *the owner may give his judgment as to the amount of damages suffered.* He may give his opinion as to the value of the car, as he is presumed to be familiar in some way with its worth. 15 Blashfield, AUTOMOBILE LAW AND PRACTICE 5-7, 480.2 (3rd ed. 1969). (Emphasis supplied.)

It is true Smith did not specifically state the exact market value of his automobile immediately after the injuries which occurred from June 8, 1970 to March 3, 1971. Instead, he gave the aggregate loss in value attributable to the injuries ($4,000.00). However, the market value after the injury could easily be calculated by subtracting the Four Thousand ($4,000.00) Dollar sum from the market value of the property (purchase price of $6,347.33) just before the injury. On appeal uncertainty as to the *exact* amount of damages is resolved against the wrongdoer. *City of Fort Wayne* v. *Capehart-Farnsworth Corp.* (1957), 127 Ind. App. 412, 424, 142 N.E.2d 442, 448, recites the rule:

It was the tortious act of appellant which created this situation and all doubts and uncertainties as to the proof of the exact measure of damages must be resolved against it. "* * * any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. * * * The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. * * *". *Bigelow* v. *R.K.O. Radio Pictures, Inc.* (1945), 327 U.S. 251, 264, 265, 66 S.Ct. 574, 90 L.Ed. 652, 660. *See Gene B. Glick Co.* v. *Marion Constr. Corp.* (1975), 165 Ind. App. 72, 331 N.E.2d 26.

Such short form renditions have been sanctioned in cases involving damage to real estate. *See State* v. *Reid* (1933), 204 Ind. 631, 185 N.E. 449; *Bowlus* v. *Brier* (1882), 87 Ind. 391; *cf. Rieth-Riley Constr. Co.* v. *McCarrell* (1975), 163 Ind. App. 613, 325 N.E.2d 844; *Contra City of Huntington* v.

*Stemen* (1906), 37 Ind. App. 553, 77 N.E. 407; *The Louisville N.A. & C. Ry.* v. *Sparks* (1895), 12 Ind. App. 410, 40 N.E. 546.

We can only conclude that there was substantial evidence of probative value to support an award of Four Thousand ($4,000.00) Dollars, and no more.

### DECISION

ISSUE TWO

CONCLUSION—It is our opinion that damages for mental anguish suffered as a result of negligent injury to an automobile are not recoverable in Indiana. Awarding damages for mental anguish,[5] absent physical injury to the person or willful or unlawful conduct, has not been favored by Indiana courts. Neither party cites an Indiana precedent allowing mental anguish as a proper element of compensatory damages for a negligent injury to personal property, and we know of none.

The reasons courts are reluctant to award such damages are readily apparent. The very nature of the claim is subjective and may easily be feigned. Courts naturally fear a flood of fictitious claims carrying with it potential for imposing unlimited liability. "Mental pain or anxiety," observed Lord Wensleydale over a century ago, "the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone."[6]

Traditionally courts have allowed damages for mental anguish if such anguish occurs under circumstances tending to guarantee its genuineness . . . which most frequently occurs when mental anguish is accompanied by physical

---

5. The term mental anguish seems to be used interchangeably with mental disturbance, mental distress, mental suffering.
6. *Lynch* v. *Knight* (1861), 9 H. of L. Cases, 577, 598, 11 Eng. Rep. 854, continuing: "Though where a material damage occurs, and is connected with it, it is impossible a jury, in estimating it, should altogether overlook the feelings of the party interested."

injury to the person. The wrongful act producing the tangible injury provides the added assurance that mental disturbance actually occurred, i.e. the mental suffering is necessarily parasitic to the host cause of action:

> b. Where the actor's tortious conduct in fact results in the invasion of another legally protected interest, as where it inflicts bodily harm, or imposes a confinement, emotional distress caused either by the resulting invasion or by the conduct may be a matter to be taken into account in determining the damages recoverable. In many instances there may be recovery for emotional distress as an additional, or "parasitic" element of damages in an action for such a tort. RESTATEMENT (SECOND) OF TORTS § 47, Comment (b) (1965) ; *see Rodrigues* v. *State of Hawaii* (1970), 52 Hawaii 156, 472 P.2d 509. 25 C.J.S. *Damages* § 63 (1966) ; MCCORMICK, THE LAW OF DAMAGES, § 89 (1935) ; W. PROSSER, HANDBOOK OF THE LAW OF TORTS, §§ 12, at 51 § 54 at 327-32 (4th ed. 1971).

Indiana has long followed the general rule that damages for mental anguish are recoverable only when accompanied by and resulting from a physical injury. *See Leatherman* v. *Gateway Transp. Co.* (7th Cir. 1964), 331 F.2d 241; *Berrier* v. *Beneficial Finance, Inc.* (N.D. Ind. 1964), 234 F.Supp. 204; *New York, C. & St. L. R.R.* v. *Henderson* (1958), 237 Ind. 456, 146 N.E.2d 531, *rehearing denied,* 237 Ind. 456, 147 N.E.2d 237; *Boston* v. *Chesapeake & O. Ry.* (1945), 223 Ind. 425, 61 N.E.2d 326; *Lake Erie & W. R.R.* v. *Johnson* (1922), 191 Ind. 479, 133 N.E. 732; *Indianapolis Traction & Terminal Co.* v. *Hensley* (1917), 186 Ind. 479, 115 N.E. 934; *Vandalia Coal Co.* v. *Yemm* (1910), 175 Ind. 524, 92 N.E. 49, *rehearing denied,* 175 Ind. 524, 94 N.E. 881; *Pittsburgh C., C. & St. L. Ry.* v. *Montgomery* (1898), 152 Ind. 1, 49 N.E. 582; *Cox* v. *Vanderkleed* (1863), 21 Ind. 164; *Jeffersonville Silgas, Inc.* v. *Wilson* (1972), 154 Ind. App. 398, 290 N.E.2d 113; *Earle* v. *Porter* (1942), 112 Ind. App. 71, 40 N.E.2d 381; *Harrod* v. *Bisson* (1911), 48 Ind. App. 549, 93 N.E. 1093; *Gaskins* v. *Runkle* (1900), 25 Ind. App. 584, 58 N.E. 740; *Kalen* v. *Terre Haute & I. R.R.* (1897), 18 Ind. App. 202, 47 N.E. 694.

Typical is *Kalen* v. *Terre Haute & I. R.R., supra* at 206, 47 N.E. at 697:

> It is well settled that mental suffering may be taken into consideration in estimating damages in cases of physical injury caused by actionable negligence; that recovery may be had for physical and mental suffering produced by and arising out of such physical injury, and that in such case the jury may consider the bodily pain and suffering and the anxiety and distress caused by the injury as natural and direct results thereof. But it has been often denied that fright, peril, pain of mind or mental suffering may constitute a distinct and separate ground of recovery or element of damages, though in truth proximately resulting from a wrong.

> It has been the general doctrine that mental suffering alone not accompanied by any physical injury, can not be the foundation for the recovery of damages, except in some instances where they are allowed as a species of punitive damages. See *Canning* v. *Inhabitants of Williamstown,* 1 Cush. 451; *City of Selina* v. *Trosper,* 27 Kans. 544; *Atchison, etc., R.R. Co.* v. *McGinnis,* 46 Kans. 109, 26 Pac. 453; *Morse* v. *Duncan,* 14 Fed. 396; *Wyman* v. *Leavitt,* 71 Me. 227; *Johnson* v. *Wells, Fargo & Co.,* 6 Nev. 224; *Indianapolis, etc., R.R. Co.* v. *Stables,* 62 Ill. 313; *Terre Haute, etc., R.R. Co.* v. *Brunker,* 128 Ind. 542.

However, the general rule has been subject to one exception. Indiana courts have awarded compensatory damages for mental anguish unaccompanied by a physical injury in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. False imprisonment and assault actions are examples of instances in which a disagreeable emotional experience would normally be expected to be inextricably intertwined with the nature of the deliberate wrong committed, thereby lending credence to a claim for mental disturbance. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension.

*See Montgomery* v. *Crum* (1928), 199 Ind. 660, 161 N.E. 251 (Mental suffering may be taken into account as an element of compensatory damages for abduction of child.) ; *Harness* v. *Steel* (1902), 159 Ind. 286, 64 N.E. 875 (Humiliation and mortification resulting from public arrest are proper eelments of damage in an action for false imprisonment.) ; *Kline* v. *Kline* (1902), 158 Ind. 602, 64 N.E. 9 (Plaintiff willfully assaulted but sustained no physical injury; fright and mental suffering proper elements of damages.) ; *Pennsylvania Co.* v. *Bray* (1890), 125 Ind. 229, 25 N.E. 439 (Plaintiff may recover for the indignity of being wrongfully ejected from train.) ; *Haymond* v. *Saucer* (1882), 84 Ind. 3 (Loss of peace and mental serenity are proper elements of compensatory damages in seduction action.) ; *Aetna Life Ins. Co.* v. *Burton* (1938), 104 Ind. App. 576, 12 N.E.2d 360 (Widow may recover for mental anguish suffered as a result of unauthorized autopsy where the unlawful conduct was intentional and could be reasonably expected to produce such an emotional disturbance.) ; *Indiana R.R. Co.* v. *Orr* (1908), 41 Ind. App. 426, 84 N.E. 32 (Although plaintiff was not physically touched, he may recover damages for mental anguish caused by wrongful ejection from street car.) ; *Golibart* v. *Sullivan* (1903), 30 Ind. App. 428, 66 N.E. 188 (Mental suffering is element of damages in assault and false imprisonment action.) ; RESTATEMENT (SECOND) OF TORTS § 905, Comment c (Tent. Draft No. 16, 1970).

The Indiana cases are consistent with most other jurisdictions which allow recovery for mental anguish as an element of compensatory damages in an action for injury to personal property only if the act occasioning the injury was inspired by fraud, malice, or like motives, involving intentional conduct.

*See i.e., Smith & Gaston Funeral Directors* v. *Wilson* (1955), 262 Ala. 401, 79 So.2d 48; *Dawsey* v. *Newton* (1943), 244 Ala. 661, 15 So.2d 271; *B. F. Goodrich Co.* v. *Hughes* (1940), 239 Ala. 373, 194 So. 842; *McNeill* v. *Allen* (1975), 35 Colo. App. 317, 534 P.2d 813; *Valley Development Co.* v. *Weeks* (1961), 147 Col. 591, 364 P.2d 730; *Davis* v. *Hall* (1917), 21 Ga. App. 265(2), 94 S.E. 274, *Ayala* v. *Bailey Elec. Co.* (La. App. 1975), 318 So.2d 645; *Chriss* v. *Manchester Ins. & Indem. Co.* (La. App. 1975), 308 So.2d 803; *Lagraize* v. *State* (La. App. 1975), 306 So.2d 816; *Carimi* v. *Saia* (La. App. 1974), 301 So.2d 895;

*Fassitt* v. *United T.V. Rental, Inc.* (La. App. 1974), 297 So.2d 283; *H. & R. Block, Inc.* v. *Testerman* (1975), 275 Md. 36, 338 A.2d 48; *Zeigler* v. *F. Street Corp.* (1967), 248 Md. 223, 235 A.2d 703; *Freedeen* v. *Stride* (1974), 269 Ore. 369, 525 P.2d 166; *Brown* v. *Dorfman* (1968), 251 Ore. 522, 446 P.2d 672; *Douglas* v. *Humble Oil & Refining Co.* (1968), 251 Ore. 310, 445 P.2d 590; *Phillips* v. *Cordes Towing Serv.* (1957), 50 Wash.2d 545, 313 P.2d 377; *Murphy* v. *City of Tacoma* (1962), 60 Wash.2d 603, 374 P.2d 976; Annot., 28 A.L.R.2d 1070, 1077 (1953); 25 C.J.S. *Damages* § 68 (1966); RESTATEMENT (SECOND) OF TORTS § 905, Comment d (Tent. Draft No. 16, 1970).

In awarding such damages, the injured party is compensated, not for any private interest in peace of mind alone,[7] but for the initial wrongful act and its natural consequences.

The wrongful acts of Charlie Stuart were neither intentional nor malicious. At trial, Smith proved nothing more than negligence on the part of Charlie Stuart's employees.[8] Smith was furnished substitute transportation on request, and the record reveals repeated apologies (not insults) on the part of Charlie Stuart's employees.

In denying Smith's damages for mental anguish for negligent injury to his automobile we carry forward into the present a rule of ancient vintage. Our justification for doing so is that the reasons for the rule denying liability for mental anguish as such remain. Absent a host action such as physical injury or intentional malicious conduct, mental anguish is so speculative, so subject to exaggeration, so likely to lead to fictitious claims, and often so unforeseeable, that there is no rational basis for awarding damages. *Western Union Tel. Co.* v. *Ferguson, supra; Jeffer-*

---

7. Harm arising from the infliction of emotional distress unsupported by a host cause of action is *damnum absque injuria* in Indiana. See *Western Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 64, 60 N.E. 674, 54 L.R.A. 846; *Western Union Tel. Co.* v. *Adams* (1902), 28 Ind. App. 420, 63 N.E. 125.

8. The trial court entered a pre-trial partial summary judgment against Smith on the issue of punitive damages after finding insufficient evidence that Charlie Stuart's employees had acted wantonly or maliciously.

*sonville Silgas, Inc.* v. *Wilson, supra; Aetna Life Ins. Co.* v. *Burton, supra; Kalen* v. *Terre Haute & I. R.R., supra.*

Mental anguish, then, could not be an element of damages in support of the trial court's judgment; and to the extent the judgment exceeded Four Thousand ($4,000.00) Dollars (the amount of physical damage to the Toronado), it was erroneous. Although the trial court did not divide its Five Thousand ($5,000.00) Dollar judgment, the erroneous portion of the judgment representing the damages for mental anguish is nonetheless computable with reasonable certainty.

The only probative evidence of property damage was Smith's unrefuted testimony that this automobile has suffered a loss in value of Four Thousand ($4,000.00) Dollars.[9] At this juncture the trial court could make a conscious choice to believe or disbelieve this uncontroverted evidence. *See A.S.C. Corp.* v. *First Nat. Bank of Elwood* (1960), 241 Ind. 19, 167 N.E.2d 460; *Nationwide Mut. Ins. Co.* v. *Day* (1967), 140 Ind. App. 564, 224 N.E.2d 520; *Calvert* v. *London* (1965), 137 Ind. App. 595, 210 N.E.2d 376.

It seems obvious by the size of the judgment that the trial court accepted Smith's testimony. Without conflicting proof of property damage in some other amount, the trial court was unable to interpolate within a range of varying sums and arrive at an intermediate figure less than Four Thousand ($4,000.00) Dollars.[10] There was no standard for assessing damages less than Four Thousand ($4,000.00) Dollars, if Smith's testimony was disbelieved. To assume the trial court actually awarded less than Four Thousand ($4,000.00) Dollars in property damages implies an asessment based upon mere speculation.

9. It is important to note that Charlie Stuart assumed Smith's car had suffered some injury, but no probative evidence was ever introduced by Charlie Stuart to show the dollar amount of the injury. (See footnote four.)

10. If there had been other probative evidence setting a range of values for damage to the car, the trial court could have exercised discretion in arriving at a sum inclusive within the range. The judgment then would have been indivisible and a new trial necessary.

Our court has many times held that it is well settled that a decision or finding must be based upon the proven facts and cannot be based upon mere guess, conjecture, surmise, possibility or speculation.

*Kelly* v. *Davidson* (1959), 129 Ind. App. 384, 392, 154 N.E.2d 888, 892.

*See Halkias* v. *Gary Nat. Bank* (1968), 142 Ind. App. 329, 234 N.E.2d 652;

*Hunnicutt* v. *Boughner* (1967), 141 Ind. App. 669, 231 N.E.2d 159;

*Hanley* v. *Meyer* (1966), 139 Ind. App. 663, 215 N.E. 2d 886.

To assume that the judgment is indivisible (not severable) is to weigh the evidence and decide that the trial court necessarily appraised the injury to Smith's automobile at something less than Four Thousand ($4,000.00) Dollars. By severing and modifying the judgment we are protecting rather than invading the province of the fact finder. It is our duty to review the evidence most favor-

---

*See Beyer* v. *State* (1972), 258 Ind. 227,
280 N.E.2d 604;
*Annee* v. *State* (1971), 256 Ind. 686,
271 N.E.2d 711;
*Derloshon* v. *City of Fort Wayne* (1968),
250 Ind. 643, 238 N.E.2d 659;
*Also See Smith* v. *Glesing* (1969), 145 Ind. App. 11,
248 N.E.2d 366;
*In re Gaugh's Estate* (1955),
125 Ind. App. 282, 123 N.E.2d 199;
2 I.L.E., *Appeals* §§ 655, 656 (1957).

For example, if two items of probative evidence had shown damage to Smith's car in contradictory amounts, the trial court would be free to resolve the conflict by weighing the evidence and choosing an intermediate sum. In such an event, we would be unable to divide the trial court's judgment into correct and erroneous portions because lacking an itemization of the damages, we could not assign a sum certain for property damage and thereby calculate the amount of damages awarded for mental anguish. The indivisibility of the trial court's judgment would then constitute cause for a new trial to determine the exact amount of property damage.

Unlike personal injury and wrongful death actions, a claim for property damage is often easier to quantify than a claim for pain, or loss of future earning capacity. Courts are afforded greater discretion in recompensing a subjective injury because the damage attributable to such injury usually defies fixed rules and more precise calculation. *See Henschen* v. *New York Central R.R.* (1945), 223 Ind. 393, 60 N.E.2d 738; *Shutz* v. *Rose* (1964), 136 Ind. App. 165, 196 N.E.2d 285.

able to the judgment, to validate the trial court's action on any valid legal theory, and to refrain from substituting our judgment for that of the trial court.

It has long been established that the reviewing court will not substitute its opinion for that of the trial court on matters of evidence unless it is all one way and but one conclusion could be reached from the facts proved and that conclusion is adverse to the decision of the trial court.
*Combs* v. *City of New Albany, Floyd County* (1966), 139 Ind. App. 641, 644, 218 N.E.2d 349, 351.

*See Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N.E.2d 439;
*A.S.C. Corp.* v. *First Nat. Bank of Elwood, supra.*

As there is a valid basis for supporting the judgment in the amount of Four Thousand ($4,000.00) Dollars, which is severable[11] from the Five Thousand ($5,000.00) Dollar judgment, the trial court's judgment is affirmed in the amount of Four Thousand ($4,000.00) Dollars and reversed to the extent it exceeds that amount.

---

11. An erroneous portion of a judgment which is distinct from and independent of other parts which are correct, is severable and the remainder of the judgment may be affirmed. In *Halstead* v. *Stahl, supra,* a plaintiff improperly proceeded under the Mechanic's Lien Statute to gain a judgment of $142.45 and $25.00 in attorney's fees provided for in the statute. On appeal, this Court determined the plaintiff was not qualified to bring suit under the Mechanic's Lien Statute, and therefore the $25.00 in attorney's fees were erroneously awarded, but the judgment for $142.45 could be sustained on a theory of contract. To rectify the situation, this Court divided the judgment into correct and incorrect portions and ordered a remittitur of $25.00. Much the same approach was taken in *Chicago, Indianapolis and Louisville Rwy. Co.* v. *Brown, supra.* A faulty instruction on the measure of damages was found to affect only $200.00 of a $10,000.00 judgment. The Court remedied the problem by finding the erroneous portion severable from the judgment as a whole and ordering a remittitur of $200.00.

*Matthews* v. *Bowser, supra,* is distinguishable from this case. In *Matthews,* the plaintiff sued in replevin to recover his dragline machine, and defendant responded with an answer of estoppel and a counter-claim. Plaintiff then demurred to defendant's answer of estoppel, and the trial court granted judgment on this issue in favor of the defendant. Having thus lost his replevin action, plaintiff went on to suffer the entry of a judgment against him on defendant's counter-claim. On appeal, this Court found that for technical reasons, plaintiff should have succeeded upon his demurrer to defendant's answer. Rather than modifying the judgment or ordering a remittitur, the Court held that the result in plaintiff's replevin suit seriously affected the trial court's decision to grant relief on defendant's counter-claim, and therefore a new trial was necessary.

See Halstead v. Stahl (1911), 47 Ind. App. 600, 94 N.E.
   1056;
   Chicago, Indianapolis and Louisville Rwy. Co. v. Brown
      (1901), 157 Ind. 544, 16 N.E. 346;
   Compare Matthews v. Bowser (1964), 135 Ind. App. 513,
      195 N.E.2d 494.

Neither party having questioned liability, a new trial would serve no useful purpose, so the trial court is ordered to enter judgment in favor of Smith in the amount of Four Thousand ($4,000.00) Dollars. See Appellate Rule 15(N) (5); Lake Mortgage Co. v. Federal Nat'l Mortgage Ass'n (1975), 262 Ind. 601, 321 N.E.2d 556; Weenig v. Wood (1976), 169 Ind. App. 413, 349 N.E.2d 235.

Affirmed in part and reversed in part.

Staton, J. (by designation) affirms, and Sullivan, J., dissenting in part and concurring in part.

OPINION CONCURRING IN PART, DISSENTING IN PART

SULLIVAN, J.—I concur in that portion of the decision which holds that the Court erred in awarding damages for mental anguish. That very error, however, in my view, compels reversal of the judgment and remand of the cause for a new trial solely with respect to the issue of compensatory damages for injury to personal property.

In the case before us, affirmance of the judgment to the extent of $4,000 presupposes that the Court below, as the trier of fact, believed Plaintiff's property damage to be precisely in the amount which Plaintiff stated to be the loss of value to his automobile, and that the trial court awarded only $1,000 for mental anguish. I do not believe we are empowered to indulge that supposition.

The judgment rendered below is not divisible or severable so as to permit our modification of the judgment without invading the province of the trier of fact. See Superior Laundry Co. v. Rose (1923), 193 Ind. 138, 144, 139 N.E. 142; Matthews v. Bowser (1964), 135 Ind. App. 513, 517, 195 N.E.

2d 494. Cf. *Chicago, I & L Ry.* v. *Brown* (1901), 157 Ind. 544, 549, 60 N.E. 346, 348; *Halstead* v. *Stahl* (1911), 47 Ind. App. 600, 602, 94 N.E. 1056. I do not view the evidence with respect to injury to personal property to be so clear and unrebutted as to authorize us to fix the proper damages. *See Weenig* v. *Wood* (1976), 169 Ind. App. 413, 349 N.E.2d 235, 257, *quoting* 4 Harvey and Townsend, Indiana Practice at 152-53. It is at least arguable that certain evidence of record, to the effect that Smith indicated a willingness to trade in his damaged 1970 Toronado plus $1,000 cash for a 1971 Toronado, would permit a reasonable trier of fact to fix Smith's recoverable damages (measured by the damaged car's value) at less than $4,000.

The majority here views the "size of the judgment" as an obvious acceptance by the trial court of Smith's conclusory statement that he was damaged $4,000 "by just plain loss of value." I disagree. It appears to me as likely, if not more likely, that the trial court attributed more value significance than $1,000 to Smith's substantial inconvenience and legitimate consumer displeasure, i.e., mental anguish.

Accordingly, I would reverse and remand the cause for new trial solely upon the issue of compensatory damages in such amount as will compensate claimant for the diminution in value occasioned to Plaintiff's automobile by the acts of Defendant Stuart.

NOTE.—Reported at 357 N.E.2d 247.